UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
NOV 12 2025
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

---

JOSEPH M. FUSCO III,

       *Plaintiff,*

    *v.*

MONROE COUNTY, NEW YORK,

       *Defendant.*

25-CV-6505-MAV

AMENDED COMPLAINT FOR
DEPRIVATION OF CIVIL RIGHTS
UNDER 42 U.S.C. § 1983

---

Plaintiff Joseph M. Fusco III, appearing *pro se*, brings this civil rights action under

42 U.S.C. § 1983 and respectfully alleges:

## I. NATURE OF THE ACTION

1. This action challenges Monroe County's systematic practice of accepting and
   docketing court orders without verifying that underlying motions exist, in
   violation of the First Amendment's Petition Clause and the Fourteenth
   Amendment's Due Process Clause.

2. Plaintiff does not seek review of state court decisions or reversal of state
   court judgments. Plaintiff challenges the administrative practice that
   prevents judicial review of those decisions in any forum.

3. This practice—accepting orders without verifying procedural
   prerequisites—is a ministerial function performed by County employees, not
   a judicial act. The violation is objectively provable through public records and
   does not require this Court to assess the correctness of any judicial decision.

1

4. Plaintiff seeks declaratory judgment establishing that this practice violates the United States Constitution, injunctive relief requiring implementation of verification procedures, and nominal damages to establish Plaintiff as the prevailing party.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1343(a)(3) (civil rights).

6. This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983.

7. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant resides in this district and the events giving rise to this action occurred in this district.

8. This amended complaint is filed pursuant to this Court's October 30, 2025 Decision and Order granting Plaintiff leave to amend within thirty days.

## III. PARTIES

9. Plaintiff Joseph M. Fusco III is a citizen of the United States, a resident of Monroe County, New York. Plaintiff is a software engineer who designs and maintains large-scale open-source web based systems.

10. Defendant Monroe County is a municipal corporation organized and existing under the laws of the State of New York, with its principal place of business in Rochester, New York.

2

11. Monroe County is responsible for administering New York State Supreme Court operations within its jurisdiction, including the ministerial functions of accepting, processing, and docketing court filings.

12. Monroe County acts through its employees and agents, including law clerks who perform the ministerial function of accepting court orders and entering them into the official court record.

## IV. FACTUAL ALLEGATIONS

### A. The Constitutional and Statutory Framework

13. New York Civil Practice Law and Rules ("CPLR") § 2214(a) provides:

> "Unless otherwise specified by statute, a motion on notice shall be made upon notice of motion, specifying the time and place of the hearing on the motion, the supporting papers upon which the motion is based, the relief requested and the grounds therefor."

14. New York's highest court has held that orders issued without the required underlying motion are void ab initio. *Matter of Aho v. Aho*, 39 N.Y.2d 241, 248 (1976) ("an order which was made without a motion, where a motion was required, is a nullity and must be vacated").

15. The requirement that court orders be preceded by written motions serves essential constitutional purposes:

    a. Notice: The opposing party receives advance notice of the relief sought and the grounds for that relief, enabling meaningful opportunity to respond.

3

    b.  Record Creation: A motion creates a record of the legal and factual basis for judicial action, enabling appellate review.

    c.  Adversarial Process: Motion practice ensures both parties can present arguments before judicial action affects their rights.

    d.  Due Process: The motion requirement implements the fundamental constitutional guarantee that property and liberty interests shall not be deprived without due process of law.

16. The Supreme Court has recognized that procedural requirements protecting the right to be heard before governmental deprivation are not mere formalities but constitutional necessities. *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965) ("A judgment entered without notice or service is constitutionally infirm"); *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) ("the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner'").

17. Court clerks performing the ministerial function of screening papers to ensure procedural compliance lack absolute judicial immunity. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993) ("A court clerk's screening of papers to ensure compliance with procedural rules is a ministerial task").

18. The constitutional framework allocates responsibility: judges make substantive decisions protected by absolute immunity; clerks verify procedural compliance and possess only qualified immunity. This separation

protects litigants' constitutional rights by ensuring independent verification of jurisdictional prerequisites.

B. Monroe County's Systematic Practice of Ministerial Verification Failures

19. Monroe County maintains a widespread, persistent custom and practice of accepting and docketing court orders without verifying whether underlying motions exist in the electronic filing system (NYSCEF[1]) or physical court files.

20. This practice manifests through multiple institutional failures, each representing an affirmative policy choice to forego basic quality control procedures:

   a. No Verification Policy: Monroe County has adopted no written policy or procedure requiring law clerks to verify that a motion exists before accepting a court order for docketing.

   b. No Training: Monroe County provides no training to law clerks on procedures for verifying motion prerequisites before order acceptance.

   c. No Tracking System: Monroe County maintains no system linking orders to underlying motions or flagging orders submitted without corresponding motions.

---

[1] NYSCEF is the electronic filing system used by the New York State Unified Court System.

d. No Quality Control: Monroe County performs no supervisory review to ensure orders are docketed only when procedural prerequisites are satisfied.

21. The practice is sufficiently widespread—affecting multiple case types, multiple judges, multiple forms of relief, and spanning years of operation—that policymakers cannot claim ignorance. The systematic acceptance of orders without verification across different personnel, different dates, and different types of proceedings (property, custody, support, procedural) establishes actual or constructive knowledge at the policymaking level.

22. This systematic practice affects every litigant in Monroe County Supreme Court, potentially impacting all 740,000 Monroe County residents who may seek judicial relief. The County's failure to verify procedural prerequisites denies the entire population meaningful access to courts when government action affects their rights.

23. Monroe County's final policymakers—including its County Clerk and the Administrative Judges responsible for Supreme Court operations—have actual or constructive knowledge of this practice.

24. Despite knowledge that orders are routinely accepted without verification of motions, and despite the minimal burden of implementing verification procedures, Monroe County has taken no corrective action.

25. This deliberate indifference to known constitutional risk constitutes official

policy under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

C. Three Orders Issued Without Motions—Objectively Verifiable

26. Plaintiff's matrimonial proceeding, *Fusco v. Fusco*, Index No. I2024000429,

Monroe County Supreme Court, exemplifies Monroe County's systematic

practice.

27. In this single case, three substantial orders were issued and docketed without

underlying motions. This is not Plaintiff's characterization or legal

opinion—it is objectively verifiable through examination of the public court

record.

The October 8, 2024 Order and Subsequent Events

28. On October 8, 2024, Hon. James E. Walsh Jr. issued an order directing

Plaintiff's spouse to vacate the marital residence located at 211 West

Bloomfield Road, Pittsford, New York 14534, by October 18, 2024.

29. Between October 8, 2024 and January 10, 2025, no motion was filed seeking

to modify, vacate, supersede, or otherwise alter Judge Walsh's order requiring

Plaintiff's spouse to vacate the residence.

30. NYSCEF documents #55 through #99 constitute all filings made in the case

during this period. Examination of these documents reveals no motion for

exclusive use of the marital residence, no motion for modification of the

October 8 order, and no motion seeking any relief related to possession of the property.

The January 10, 2025 Order—Issued Without Motion

31. On January 10, 2025, a conference was held before Hon. Gail A. Donofrio. Both parties were represented by counsel. The conference transcript reflects the following exchange:

> Opposing Counsel: "I would ask for exclusive use [of the marital residence] until the hearing, just so my client and [redacted child's name]—"
>
> Court: "The Court will grant that application."

32. No written motion for exclusive use had been filed. No notice of motion appeared in NYSCEF. No supporting papers accompanied any request for this relief.

33. Judge Donofrio's order granting exclusive use of the marital residence was presented to Monroe County's law clerks for acceptance and docketing.

34. Monroe County's law clerks accepted this order and entered it into the official court record without verifying that any underlying motion existed.

35. The resulting order, docketed as NYSCEF Document #99, granted Plaintiff's spouse exclusive use and occupancy of the marital residence and directed Plaintiff to "immediately vacate the marital home."

Plaintiff's Attempt to Obtain the Motion

36. When Plaintiff sought to identify and review the motion underlying this order, Monroe County's Principal Law Clerk, acting in her administrative capacity as custodian of court records, responded: "You have full access to NYSCEF."

37. This response constitutes an admission by Monroe County's administrative personnel that no specific motion could be identified in the court's records—because no motion exists.

38. The absence of any motion for exclusive use in NYSCEF Documents #55-99 is not disputed and can be verified by simple inspection of the public docket.

The October 14, 2025 Orders—Four Orders Without Motions

39. On October 14, 2025, Plaintiff requested a conference to address opposing party's non-compliance with prior court orders.

40. At this conference before Hon. John B. Gallagher Jr., Plaintiff arrived approximately three minutes late due to transportation difficulties resulting from his ongoing displacement from the marital residence.

41. Before Plaintiff could present his concerns about opposing party's violations, Judge Gallagher issued an Order of Protection *sua sponte* directing complete stay-away and no contact between Plaintiff and his 12-year-old daughter.

42. The conference transcript establishes that this order was not requested by any party. The court stated on the record:

"Just so we're sure so the record is clear so if he appeals this—he certainly can, I recommend that he appeals this, is that there was no request for an order of protection by anybody in this courtroom today that I'm aware of. There may have been previously... I have ordered it. Okay? So nobody here besides me."

43. No written motion seeking an Order of Protection appears in NYSCEF.

44. Monroe County's law clerks accepted this order and entered it into the official court record without verifying that an underlying motion existed.

45. The resulting Order of Protection, docketed as NYSCEF Document #270, directed complete stay-away from Plaintiff's daughter and prohibited all communication, effectively suspending all parenting time.

46. The order was issued *sua sponte* without notice or opportunity to respond. Plaintiff had no advance notice that an Order of Protection would be sought.

### No Explanation or Factual Basis on Record

47. The October 14, 2025 Order of Protection contains no factual findings, no recitation of specific conduct, and no articulation of any basis for severing the parent-child relationship. No evidence was presented, no testimony was taken, and no hearing was held. Plaintiff has no notice of what allegedly warranted this remedy, making it impossible to address or contest. The order has remained in effect for $29^2$ days without any hearing, evidence, or explanation. The Order of Protection functions as justification for maintaining the January 10, 2025 exclusive use order, creating a circular

---

[2] 29 is the number of days from October 14, 2025 - November 12, 2025.

system where one void order perpetuates another, leaving Plaintiff no

mechanism to challenge either and no basis to understand the deprivation.

The Pattern Established

48. Three substantial orders—affecting property rights and parental

rights—were issued and docketed without underlying motions in a single

case.

49. In each instance, Monroe County employees responsible for accepting court

orders failed to perform the ministerial function of verifying that required

procedural prerequisites were satisfied.

50. This pattern demonstrates that Monroe County's practice of accepting orders

without verification is not an isolated error but a systematic failure affecting

multiple types of relief and involving multiple judicial officers.

51. October 30, 2025 *Pro Se* Filing Rejection: Plaintiff filed an Order to Show

Cause in person at the Monroe County Clerk's office, as required for *pro se*

parties under 22 NYCRR § 202.5(b)(2)(i)[3]. Monroe County Clerk Jess L. Ives

properly accepted the papers and filed them electronically as NYSCEF

Documents #312-324, confirming service to all parties. Hours later, the filing

was rejected through the electronic filing system with only the notation

"Permission required to eFile." This notation is not a written order stating

---

[3] Under New York court rules, pro se parties who are not registered for electronic filing must file papers in person at the County Clerk's office, and the Clerk then files them electronically. 22 NYCRR § 202.5(b)(2)(i). Plaintiff followed this procedure on October 30, 2025.

grounds for denial as required by CPLR § 2219(a)[4]. No proper written order was issued. No grounds were stated. No legal basis was provided. No process was given for obtaining the alleged "permission." This compounds the systematic verification failures: orders are accepted without verifying motions exist, and filings seeking to correct these violations are rejected without the written orders required by New York law.

Multiple County Personnel Failed to Verify

52. The acceptance of orders without verification involved multiple Monroe County law clerks and administrative personnel acting in their ministerial capacity as processors of court filings:

53. January 10, 2025 Order (NYSCEF #99): Monroe County personnel accepted and docketed this order granting exclusive use of the marital residence without verifying that any motion for exclusive use existed in NYSCEF Documents #55-99. No verification was performed to confirm that a motion preceded the order, that all parties received notice of the relief sought, or that the person submitting the proposed order was authorized to do so.

54. October 14, 2025 Order of Protection (NYSCEF #270): Monroe County personnel accepted and docketed this order directing complete stay-away and no-contact without verifying that any motion for an Order of Protection existed in the court file or NYSCEF. The order was issued *sua sponte* without

---

[4] Under New York law, CPLR § 2219(a) requires that orders denying motions state the grounds for denial. Monroe County's notation "Permission required to eFile" states no grounds and cites no legal authority.

request from any party, yet was processed and entered into the official record without verification of procedural prerequisites.

55. September 29, 2024 Support Order: Monroe County personnel accepted and docketed a support order without verifying that a proper motion with required affidavit existed in NYSCEF.

56. October 30, 2025 Filing Rejection: Monroe County personnel accepted Plaintiff's Notice of Intent to Proceed *Pro Se* (NYSCEF #311), then hours later administratively rejected it with the notation "Permission required to eFile," but issued no written order explaining the rejection or stating the legal basis, in violation of CPLR § 2219(a). This compounds the systematic verification failures: orders are accepted without verifying motions exist, and filings seeking to correct these violations are rejected without written orders explaining why.

57. Pattern Across Multiple Personnel: The failure to verify procedural prerequisites occurred across multiple County employees, on multiple dates, involving multiple judges, and affecting multiple types of relief (property rights, parental rights, support obligations, self-representation rights). This pattern demonstrates systematic institutional failure, not isolated individual error. The repetition of the same ministerial failure by different County personnel acting at different times establishes that the failure results from County custom and practice, not from individual employee negligence.

### D. Monroe County's Demonstrated Capacity to Comply with Procedural Requirements

58. Monroe County's systematic failure to verify motion prerequisites is not the result of incapacity, inadvertence, or resource constraints. Monroe County possesses the institutional knowledge, trained personnel, and established procedures to ensure procedural compliance when it chooses to do so.

### Monroe County's Motion for Discovery Access in the Underlying Matrimonial Case

59. On October 21, 2025, Monroe County—through Assistant County Attorney Zachary Tyler Nelson, Esq.—filed a Notice of Motion (NYSCEF Doc. #272) in the underlying state matrimonial proceeding (*Fusco v. Fusco*, Index No. I2024000429).

60. Monroe County filed this motion as a non-party to the matrimonial case. Monroe County has no party status in *Fusco v. Fusco*. Monroe County intervened solely to obtain access to sealed matrimonial records for use in defending Monroe County in federal court.

61. The motion sought an order under New York Domestic Relations Law § 235 authorizing "counsel for Monroe County to access, peruse, scan, copy, and use the records of this matrimonial action to the extent necessary for the County to defend itself in *Fusco, III v. Monroe County*, No. 6:25-cv-06505-MAV, a federal lawsuit brought by Joseph M. Fusco III based on orders and proceedings in this matrimonial action.

62. Monroe County attached seven exhibits (NYSCEF Docs. #275-281) consisting
    of the complete federal court docket and all pleadings from this federal case,
    proving Monroe County obtained, reviewed, and understood Plaintiff's
    constitutional allegations challenging Monroe County's practice of accepting
    orders without verifying that underlying motions exist.

What Monroe County's Motion Proves: Five Critical Admissions

63. Monroe County's October 21, 2025 motion constitutes a series of formal
    admissions, made under oath in a court filing, that establish Monroe
    County's knowledge, capacity, and deliberate choice.

First: Perfect Procedural Compliance

64. Monroe County's motion complied fully with CPLR § 2214(a): written Notice
    of Motion (NYSCEF Doc. #272), Supporting Affirmation (NYSCEF Doc.
    #274), Memorandum of Law (NYSCEF Doc. #282), seven exhibits (NYSCEF
    Docs. #275-281), Proposed Order (NYSCEF Doc. #283), and proper service on
    all parties. The motion demonstrated Monroe County's complete mastery of
    CPLR motion practice, DRL § 235 requirements governing sealed
    matrimonial records, service requirements, and the fundamental distinction
    between motions (which initiate relief) and orders (which grant relief). The
    motion was professionally drafted and procedurally flawless.

Second: Actual Knowledge That Orders in This Case Create
Federal Constitutional Liability

65. Monroe County's motion explicitly states that Plaintiff's federal civil rights
action is "based on orders and proceedings in this matrimonial action."

66. This language—drafted by Monroe County's County Attorney and filed under
oath—constitutes Monroe County's formal admission that:

    a. Monroe County knows that specific orders in the *Fusco* matrimonial
case form the basis of Plaintiff's federal constitutional claims;

    b. Monroe County recognizes that "orders and proceedings" in this
particular matrimonial case create potential federal liability for
Monroe County;

    c. Monroe County understands that Plaintiff alleges constitutional
violations arising from how Monroe County processed those orders;

    d. Monroe County deems the federal constitutional claims sufficiently
serious to warrant intervention as a non-party in the matrimonial
case;

    e. Monroe County needs access to the complete matrimonial
record—including orders, transcripts, and filings—to defend against
Plaintiff's allegations that Monroe County's ministerial practice of
accepting orders without verification violates constitutional rights.

67. Monroe County cannot claim lack of notice, lack of knowledge, or lack of
awareness that orders accepted without verification of underlying motions
were creating constitutional harm. Monroe County filed a motion explicitly

acknowledging that orders in this case form the basis of federal constitutional claims.

68. Monroe County attached these federal pleadings as exhibits, proving Monroe County read, understood, and comprehends the constitutional allegations and recognizes that clerk verification failures create Monell liability.

Third: Institutional Knowledge of Motion Requirements

69. Monroe County's procedural compliance proves Monroe County possesses comprehensive institutional knowledge of CPLR § 2214 requirements: that court orders require underlying motions, that motions must specify grounds and include supporting papers, that proper service is required, and that courts verify procedural compliance before granting relief. Monroe County's County Attorney understood that to obtain an order granting access to sealed records, Monroe County had to file a proper motion—not simply submit a proposed order. This institutional knowledge resides within Monroe County's County Attorney's office, a county department that works in coordination with Monroe County court administration under the authority of Monroe County's final policymakers.

Fourth: Coordination Between County Attorney and Court Administration

70. Monroe County's motion was submitted to the same Monroe County law clerks who accepted the January 10, 2025 exclusive use order (NYSCEF Doc. #99), the October 14, 2025 Order of Protection (NYSCEF Doc. #270), and the

September 29, 2025 support order (NYSCEF Doc. #255)—all without verifying that underlying motions existed. Monroe County's County Attorney demonstrated perfect procedural compliance when filing with these same clerks because the County Attorney expected verification would occur. The County Attorney's expectation of verification when Monroe County is the movant, contrasted with systematic verification failures when county residents are affected parties, demonstrates that verification capacity exists but is selectively deployed based on whose interests are at stake. Monroe County acts as a unified institutional entity under final policymakers who coordinate policy across all county operations, proving Monroe County's institutional capacity to implement verification procedures.

Fifth: Monroe County Chose to Defend the Practice Rather Than Fix It

71. The timing and substance of Monroe County's motion reveal a deliberate institutional choice about resource allocation and priorities.

72. Timeline of Actual Knowledge:

   a. September 23, 2025: Plaintiff filed this federal civil rights action (Case No. 6:25-cv-06505-MAV) explicitly challenging Monroe County's practice of accepting orders without verifying motions;

   b. October 14, 2025: Despite knowledge of federal litigation, Monroe County clerks accepted another Order of Protection (NYSCEF Doc. #270) without verifying any motion existed, demonstrating continuation of challenged practice;

18

    c.  October 21, 2025: Monroe County filed motion seeking records to defend practice in federal court rather than implementing corrective procedures.

73. When Monroe County learned that orders in the Fusco case—accepted without verification of motions—formed the basis of a federal constitutional claim, Monroe County faced a binary choice:

    a.  Option A (Prevent Future Violations): Implement verification procedures to ensure motions exist before orders are accepted, thereby protecting county residents' constitutional rights and eliminating the practice causing federal liability.

    b.  Option B (Defend Past Violations): Intervene as a non-party in the matrimonial case, file a procedurally perfect motion demonstrating institutional knowledge of proper procedure, obtain sealed records, and use those records to defend Monroe County in federal court against constitutional claims.

74. Monroe County chose Option B.

75. Monroe County allocated resources to researching DRL § 235, drafting a procedurally compliant motion with seven exhibits, and obtaining sealed records for federal court defense. Monroe County allocated zero resources to implementing verification procedures, training clerks, or preventing future constitutional violations.

76. Between September 23, 2025 and October 21, 2025, Monroe County had 28 days of actual knowledge that its practice creates federal constitutional liability. During those 28 days, Monroe County continued accepting orders without verification (October 14 Order of Protection), monitored federal litigation, and filed a procedurally perfect motion demonstrating institutional knowledge and capacity—yet took no action to implement verification procedures or prevent future violations. This allocation decision—defend rather than fix—made with actual knowledge of constitutional risk, demonstrated capacity, and minimal implementation burden, constitutes deliberate indifference under *City of Canton v. Harris*, 489 U.S. 378 (1989).

Minimal Burden of Implementation Proven

77. Monroe County researched DRL § 235, drafted motion papers, assembled seven exhibits, served parties, and obtained the requested relief—a multi-step legal project taking hours or days. If Monroe County can accomplish this complex undertaking when seeking records for defense, Monroe County can implement a simple verification procedure: before accepting an order, check NYSCEF or the physical file to confirm a motion exists—a database query taking seconds. Monroe County allocated substantially greater resources to defend the practice than would be required to fix it, proving the burden is minimal.

Moving Force and Monell Causation

78. Monroe County's October 21, 2025 motion proves every element of *Monell* liability:

   a. Actual Knowledge: Monroe County explicitly acknowledged in a sworn court filing that Plaintiff's federal constitutional claims are "based on orders and proceedings in this matrimonial action." Monroe County attached Plaintiff's federal Summons and Complaint proving Monroe County read and understood the allegations. Monroe County has actual knowledge—formally admitted in state court—that accepting orders without verifying motions creates federal constitutional liability.

   b. Capacity: Monroe County demonstrated institutional capacity to comply with procedural requirements by filing a procedurally perfect motion complying with CPLR § 2214 and DRL § 235. Monroe County proved it possesses the legal expertise, personnel resources, and administrative capability to ensure procedural compliance when Monroe County chooses to do so.

   c. Minimal Burden: Monroe County proved that procedural compliance imposes minimal burden by effortlessly complying when filing its DRL § 235 motion—a far more complex undertaking than the simple verification procedure (checking whether a motion exists before accepting an order) that Monroe County refuses to implement.

   d. Deliberate Choice: Monroe County chose to allocate resources to federal court defense rather than to constitutional compliance. With 28

days of actual knowledge (September 23 to October 21, 2025), Monroe

County chose to defend the practice rather than fix the practice. This

choice was made by Monroe County's final policymakers (County

Attorney acting on behalf of County) with actual knowledge of

constitutional risk, demonstrated capacity to implement procedures,

and awareness of minimal implementation burden.

e. Continuation of Practice: Despite actual knowledge that the practice

creates federal liability, Monroe County continued the practice. On

October 14, 2025—21 days after Plaintiff filed federal constitutional

claims—Monroe County clerks accepted another Order of Protection

without verifying any motion existed. Monroe County's challenged

practice continued unabated during the same period Monroe County

was preparing its motion for federal court defense.

79. Monroe County's October 21, 2025 motion for DRL § 235 access, filed after

actual knowledge of federal constitutional claims, proves that Monroe

County's custom of accepting orders without verification was not inadvertent,

was not the result of incapacity, and was not the product of resource

constraints.

80. It was a deliberate institutional choice, proven by Monroe County's allocation

of resources to procedurally perfect filings when Monroe County's interests

are threatened, while systematically denying procedural infrastructure when

county residents' constitutional rights are at stake.

22

81. This deliberate choice, made with actual knowledge of constitutional harm, demonstrated capacity to implement safeguards, awareness of minimal burden, and continuation of the challenged practice, constitutes the "moving force" causing Plaintiff's constitutional injury under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Summary: Actual Knowledge, Demonstrated Capacity, Deliberate Choice

82. Monroe County knows what proper procedure requires. Monroe County proved this knowledge by filing a procedurally perfect motion complying with CPLR § 2214 and DRL § 235 on October 21, 2025.

83. Monroe County can comply when Monroe County chooses to. Monroe County proved this capacity by successfully intervening as a non-party in a matrimonial case to obtain sealed records for federal court defense.

84. Monroe County has actual knowledge that orders in this case create federal constitutional liability. Monroe County admitted this knowledge in a sworn court filing stating that Plaintiff's federal claims are "based on orders and proceedings in this matrimonial action."

85. Monroe County chose to defend rather than fix. Despite 28 days of actual knowledge (September 23 to October 21, 2025), Monroe County allocated resources to obtaining records for defense while allocating no resources to implementing verification procedures to prevent future violations.

86. Monroe County continued the challenged practice during the defense preparation period. On October 14, 2025, Monroe County clerks accepted another order without verifying any motion existed.

87. Monroe County filed this procedurally perfect motion in the very case where procedurally defective orders were being accepted—orders that Monroe County explicitly acknowledged form the basis of federal constitutional claims—to obtain records to defend the practice that produces the defective orders.

88. This is not inadvertence. This is not incapacity. This is not resource constraint. This is deliberate institutional policy under *Monell*, proven through Monroe County's own sworn court filing that demonstrates actual knowledge, institutional capacity, minimal implementation burden, and deliberate choice to defend rather than correct a practice that Monroe County knows violates constitutional rights.

E. Denial of Access to Courts—All Four Christopher Elements Satisfied

89. Monroe County's practice of accepting orders without verifying motions exist has denied Plaintiff access to all courts to challenge these void orders for 306[5] days, from January 10, 2025 through the present.

90. Plaintiff's professional background in designing quality control systems for large-scale applications informed recognition that this pattern represents institutional process failure rather than individual error. Monroe County's

---

[5] 306 is the number of days from January 10, 2025 - November 12, 2025.

systematic failure to verify motion prerequisites before accepting orders

represents an institutional design flaw, not isolated individual error, affecting

all county litigants through a repeatable, predictable pattern of constitutional

violations. This is not a matter of individual clerk performance but of

institutional design: the system lacks a required quality control step.

91. The Supreme Court established the framework for access-to-courts claims in

*Christopher v. Harbury*, 536 U.S. 403 (2002). To state such a claim, a plaintiff

must establish four elements: (1) a nonfrivolous underlying claim; (2) official

acts frustrating the litigation; (3) that the remedy was not alternative; and

(4) actual injury attributable to the denial of access.

### Element One: Nonfrivolous Underlying Claim

92. Plaintiff has a nonfrivolous—indeed, objectively provable—claim that

the three orders issued without motions are void under New York law.

93. *Matter of Aho* unambiguously holds that "an order which was made without a

motion, where a motion was required, is a nullity and must be vacated." 39

N.Y.2d at 248.

94. The absence of motions is not a matter of disputed fact or contested legal

interpretation. It is verifiable by examining the public court docket.

95. Plaintiff's claim that these orders are void is therefore not merely

nonfrivolous—it is objectively demonstrable through public records.

### Element Two: Official Acts Frustrated the Litigation

96. Monroe County law clerks, performing the ministerial function of accepting court orders, failed to verify that motions existed before docketing orders.

97. This ministerial failure directly frustrated Plaintiff's ability to challenge the orders through established legal processes.

98. When a court order is issued without an underlying motion, critical procedural mechanisms are eliminated:

    a.  No Motion to Challenge: There exists no motion whose legal sufficiency can be contested, whose factual basis can be disputed, or whose supporting evidence can be examined.

    b.  No Appealable Motion Decision: Appellate review typically examines whether the trial court properly granted or denied a motion. When no motion exists, there is no motion decision to review.

    c.  No Record for Appeal: Motion papers, opposition papers, and reply papers create the record for appellate consideration. Without these papers, no record exists.

    d.  No Notice of Entry: Service of notice of entry of an order typically triggers appeal deadlines. When the order was granted without a motion, the procedural framework for appeal is absent.

99. By accepting orders without verifying that motions exist, by failing to verify that all parties received notice and had opportunity to respond, and by failing to ensure that orders properly close underlying motions with stated

dispositions, Monroe County's clerks eliminated the procedural infrastructure that enables judicial review.

100.   This is precisely the type of official act that frustrates litigation within the meaning of Christopher. County employees performing ministerial functions removed the procedural mechanisms by which Plaintiff could challenge governmental deprivation.

Element Three: Remedy Was Not Alternative

101.   Plaintiff has diligently sought relief through every available forum. All have been blocked.

*Pro Se* Request Denied

102.   Plaintiff was assigned counsel (Kyle R. Steinebach, Esq.) for custody and visitation matters only. On October 30, 2025, Plaintiff filed a Notice of Intent to Proceed *Pro Se* pursuant to CPLR § 321(b)(2) to file motions challenging the procedurally void orders. Monroe County Clerk accepted the filing (NYSCEF Doc. #311) at 11:06 AM and filed it electronically. Hours later, at 1:30 PM, Monroe County administratively rejected the filing with the notation "Permission required to eFile" without issuing any written order explaining the rejection or stating the legal basis, in violation of CPLR § 2219(a), and without providing any process for obtaining the required "permission." This compounds the denial of access: filing restrictions prohibit

Plaintiff from filing in trial court, and the path to proceed *pro se* to challenge void orders is administratively blocked without explanation or process.

103.   This administrative rejection violates Plaintiff's First Amendment right to self-representation. In civil cases, parties have no constitutional right to appointed counsel, making self-representation the default right, not an exception requiring "permission." Monroe County's requirement of undefined "permission" to proceed *pro se* inverts this constitutional framework and creates an unconstitutional Catch-22: Plaintiff cannot file through assigned counsel (whose limited scope covers only custody/visitation, not the property and procedural orders at issue), and cannot file *pro se* (administratively blocked). Monroe County demonstrated its capacity to comply with procedural requirements when filing its own DRL § 235 motion, yet blocks Plaintiff's procedurally compliant *pro se* filings. This administrative obstruction by county personnel performing ministerial functions—not judicial acts—independently violates the Petition Clause and Due Process Clause, compounds the denial of access alleged throughout this complaint, and demonstrates Monroe County's deliberate choice to defend its practices rather than provide constitutionally-required court access.

### State Trial Court

104.   On October 14, 2025, Judge Gallagher imposed filing restrictions prohibiting Plaintiff from filing any papers without prior judicial permission.

These restrictions prevent filing motions to vacate the void orders. Requests for permission have been denied or ignored.

### State Appellate Court

105.    Plaintiff filed an Article 78 proceeding (Index No. OP-25-01290) challenging the January 10, 2025 order. The Appellate Division dismissed with direction to seek relief by appeal. However, Plaintiff cannot appeal because: (a) filing restrictions prohibit appeals without judicial permission, which has been denied; and (b) opposing counsel refused to provide required stipulation. The appellate court directed Plaintiff to a remedy that existing restrictions make unavailable.

### Bankruptcy Court

106.    The bankruptcy court declined jurisdiction over the state court's exclusive use order, deferring to state court authority over domestic relations matters pursuant to 28 U.S.C. § 1334(c)(2).

### Federal District Court

107.    This Court dismissed the initial complaint on October 30, 2025, based on Rooker-Feldman and Younger abstention, but granted leave to amend, recognizing proper pleading might state a claim not barred by these doctrines.

### CPLR § 5704(a) Application

108.   Between October 30 and November 10, 2025, Plaintiff made three
attempts to obtain judicial review: (1) October 30 Order to Show Cause filed
in trial court—accepted at 11:06 AM, rejected at 1:30 PM without written
order; (2) November 3 CPLR § 5704(a) application with Appellate Division
seeking acceptance or written order explaining rejection—OSC declined
November 10; (3) November 6 CPLR § 5704(a) application seeking to vacate
September 29 support order—OSC declined November 10. All three attempts
failed. Even if full § 5704(a) motion with complete briefing were ultimately
granted (taking months), it would address only whether the Appellate
Division chooses to vacate specific orders—not the systematic practice
causing orders to be entered without motions, and provides no mechanism to
prevent future violations or compel county-wide verification procedures.

Summary: No Adequate Alternative Remedy

109.   For 306 days, from January 10, 2025 through the present, Plaintiff has
been unable to obtain review of void orders in any forum:

   a.   Trial court: Blocked by filing restrictions;

   b.   State Appellate court: Blocked by filing restrictions and lack of
        stipulation;

   c.   Bankruptcy court: Declined jurisdiction;

   d.   Federal district court: Initially dismissed on jurisdictional grounds;

   e.   CPLR § 5704(a): Plaintiff filed two applications seeking Appellate
        Division review (November 3 and November 6, 2025). Justice Stephen

30

K. Lindley declined both applications on November 10, 2025. As of November 10, 2025, Plaintiff has zero pending applications, motions, or matters in any state court forum. All state court remedies have been exhausted or denied.

110.    When every forum is unavailable and no pending state court remedy remains, no "alternative remedy" exists within the meaning of Christopher.

Element Four: Actual Injury Attributable to Denial of Access

111.    During the 306-day period of denial of access to courts, Plaintiff has suffered concrete, measurable injuries directly attributable to the inability to challenge void orders:

Property Deprivation

112.    Plaintiff has been excluded from the marital residence for 306 days pursuant to the January 10, 2025 order issued without motion.

113.    The order threatens Plaintiff with up to six months incarceration for failure to obey, effectively making Plaintiff's only home and workplace a prohibited location under threat of criminal sanction.

114.    Since January 10, 2025, Plaintiff has been without stable housing, unable to establish a permanent residence. Plaintiff's belongings remain in his vehicle as he relies on temporary accommodations with friends. Throughout this period, Plaintiff has attempted to maintain mortgage payments on the residence he cannot occupy, but has been forced to prioritize critical expenses

including therapy for himself and his daughter—treatment necessitated by the deprivation of property and the severance from his child caused by these void orders.

115.    The financial strain of prolonged housing instability, combined with loss of home-based business income, has made it impossible to maintain all property- related expenses. Plaintiff faces the prospect of losing his only residence entirely due to inability to maintain timely payments while excluded from both the property and stable housing, compounding the property deprivation.

Parental Rights Deprivation

116.    Plaintiff has been separated from his 12-year-old daughter for 306 days pursuant to the January 10, 2025 Order issued without motion, and further severed with the October 14, 2025 Order of Protection issued without motion.

117.    On October 16, 2025, the Attorney for the Child filed a letter with the court stating that Plaintiff's daughter "has expressed a desire to have brief phone contact with her father" and that the daughter "would very much like to see her father" on her upcoming birthday.

118.    The Attorney for the Child further reported that, according to the child's therapist, supervised contact "could be both safe and therapeutically beneficial."

119.    Despite the child's expressed wishes and her therapist's professional
recommendation, the Order of Protection remains in effect, preventing any
contact.

### Economic Loss

120.    Plaintiff is the founder and sole owner of Whitetail Development, Inc., a
New York corporation formed prior to the marriage. Whitetail Development,
Inc. is a software engineering company that operates exclusively from
Plaintiff's home office at 211 West Bloomfield Road, Pittsford, New York
14534—which dually serves as the marital residence. The company has no
other business address or location. Since Plaintiff's exclusion from the
marital residence on January 10, 2025, Whitetail Development, Inc. has
earned zero revenue. Had proper motion practice occurred, Plaintiff would
have alerted the court that the exclusive use order would eliminate his
pre-marital business entity's only operating location. The absence of motion
practice prevented Plaintiff from presenting this information before the court
entered an order affecting the business's sole location.

121.    Displacement from the residence eliminated Plaintiff's ability to maintain
his home office, resulting in loss of business income.

### Causal Connection to Access Denial

122.    These injuries flow directly from Plaintiff's inability to access any court to
challenge the void orders.

123.    Had Plaintiff been able to challenge the January 10, 2025 order through normal appellate process:

   a. The state appellate court might have stayed enforcement pending appeal;

   b. The order might have been vacated as void under *Matter of Aho*;

   c. Plaintiff might have been restored to the residence;

   d. The ongoing financial and personal harms would have been prevented or substantially reduced.

124.    Had Plaintiff been able to challenge the October 14, 2025 orders:

   a. The Order of Protection might have been stayed or vacated;

   b. Contact between Plaintiff and his daughter might have been restored;

125.    Instead, because Monroe County's practice eliminated the procedural mechanisms for judicial review, these harms have continued unabated for 306 days and continue to accrue daily.

126.    All four elements of *Christopher v. Harbury* are therefore satisfied, establishing Plaintiff's claim for denial of access to courts.

F. Municipal Liability Under Monell

127.    Municipalities may be held liable under 42 U.S.C. § 1983 only when the constitutional violation results from official policy or custom. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

128.    Municipal liability is not vicarious—it cannot be based on respondeat superior. Id. at 691. Rather, "it is when execution of a government's policy or

custom... inflicts the injury that the government as an entity is responsible."

Id. at 694.

129.    Courts have recognized that municipal liability may be established

through proof of: (1) a formal policy officially adopted by the municipality; (2)

actions taken or decisions made by municipal officials with final

policymaking authority; (3) a practice so persistent and widespread as to

constitute custom; or (4) a failure by policymakers to properly train or

supervise subordinates, amounting to deliberate indifference. *Pembaur v.*

*City of Cincinnati*, 475 U.S. 469 (1986); *City of Canton v. Harris*, 489 U.S. 378

(1989).

Threshold Requirement: Underlying Constitutional Violation

130.    The threshold requirement for Monell liability is proof that an underlying

constitutional violation occurred. *Collins v. City of Harker Heights*, 503 U.S.

115, 120 (1992).

131.    This complaint satisfies that threshold. Monroe County employees

performing ministerial functions accepted court orders without verifying that

procedural prerequisites (underlying motions) existed, thereby eliminating

the mechanisms by which Plaintiff could seek judicial review and causing the

access-to-courts violation detailed above.

132.    These employees were acting within the scope of their employment,

carrying out their official duties as Monroe County law clerks responsible for

processing court orders.

The Custom or Policy

133.    Monroe County maintains a widespread, persistent custom of accepting
court orders without verifying that underlying motions exist.

134.    This custom manifests through specific institutional features:

    a.  Absence of Verification Policy: Monroe County has adopted no written
policy, procedure, or protocol requiring verification of motion
prerequisites before order acceptance.

    b.  Absence of Training: Monroe County provides no training to law clerks
regarding verification of motions, review of procedural prerequisites, or
quality control for order acceptance.

    c.  Absence of Tracking System: Monroe County maintains no system
linking orders to motions, flagging orders submitted without motions,
or enabling supervisory review of whether procedural prerequisites are
satisfied.

    d.  Absence of Supervision: Monroe County performs no quality control
review to ensure orders are docketed only when accompanied by proper
motions.

135.    These institutional absences constitute affirmative policy choices. By
declining to implement verification procedures, declining to train personnel,
declining to create tracking systems, and declining to supervise order
acceptance, Monroe County has adopted a de facto policy that procedural
verification is not required.

136.   This is not inadvertent failure or isolated error. It is systematic practice affecting multiple case types, multiple judges, and spanning years of operation.

137.   The persistence and breadth of this practice establish it as official custom under Monell.

### Knowledge and Deliberate Indifference

138.   Monroe County's final policymakers—including the County Clerk responsible for court administration and Administrative Judges responsible for court operations—have actual or constructive knowledge of this practice.

139.   The practice is sufficiently widespread—affecting multiple case types, multiple judges, multiple forms of relief, and spanning years of operation—that policymakers cannot claim ignorance. The systematic acceptance of orders without verification across different personnel, different dates, and different types of proceedings (property, custody, support, procedural) establishes actual or constructive knowledge at the policymaking level.

140.   Moreover, whenever an order is challenged as void for lack of an underlying motion, policymakers are put on notice that the verification system has failed.

141.   Despite actual or constructive knowledge that orders are routinely accepted without verification of motions, and despite the obvious risk of

constitutional harm from such practice, Monroe County has taken no corrective action.

142.    Moreover, Monroe County's DRL § 235 motion (NYSCEF Doc. #272) constitutes formal admission, in a sworn court filing, that Monroe County has actual knowledge that "orders and proceedings in this matrimonial action" form the basis of Plaintiff's federal constitutional claims. Monroe County explicitly acknowledged the constitutional risk and chose to defend the practice rather than implement corrective procedures.

143.    The failure to implement verification procedures despite knowledge of the risk and despite the minimal burden of implementation constitutes deliberate indifference under *City of Canton v. Harris*, 489 U.S. 378 (1989).

Moving Force

144.    Monroe County's custom was the direct and proximate cause—the "moving force"—of Plaintiff's constitutional injury.

145.    But for Monroe County's practice of accepting orders without verification:

    a.   The three orders lacking motions would not have been accepted and docketed;

    b.   Plaintiff would have been able to identify and challenge the underlying motions;

    c.   Normal appellate procedures would have been available;

    d.   Plaintiff would have had access to at least one forum for judicial review;

38

e. The 306-day denial of access would not have occurred.

146.    Monroe County's custom of non-verification was therefore the but-for

cause and substantial factor producing Plaintiff's injury.

147.    Monroe County, as a municipal entity, is liable under Monell for

maintaining the policy and custom that caused Plaintiff's constitutional

deprivation.

## V. CLAIM FOR RELIEF

### Denial of Access to Courts

(First Amendment Petition Clause and Fourteenth Amendment Due Process Clause)

148.    Plaintiff incorporates by reference all preceding paragraphs as if fully set

forth herein.

149.    The First Amendment to the United States Constitution provides that

"Congress shall make no law... abridging... the right of the people... to petition

the Government for a redress of grievances." This right is incorporated

against the states through the Fourteenth Amendment. *McDonald v. City of*

*Chicago*, 561 U.S. 742 (2010).

150.    The Fourteenth Amendment provides that no state shall "deprive any

person of life, liberty, or property, without due process of law."

151.    These constitutional provisions guarantee meaningful access to the courts.

*Christopher v. Harbury*, 536 U.S. at 415; *Bounds v. Smith*, 430 U.S. 817, 821

(1977).

152. Monroe County's systematic custom and practice of accepting court orders without verifying that underlying motions exist has denied Plaintiff access to courts for 306 days in violation of these constitutional guarantees.

153. All four elements of a Christopher access-to-courts claim are established:

   a. Nonfrivolous underlying claim (orders void under *Matter of Aho*)

   b. Official acts frustrated litigation (clerks accepted orders without verifying motions)

   c. No alternative remedy (four forums attempted, all blocked, 306 days)

   d. Actual injury (property deprivation, parental separation, economic loss)

154. Monroe County is liable for this constitutional violation under Monell:

   a. Custom or practice (systematic non-verification of motions)

   b. Knowledge and deliberate indifference (policymakers knew and took no action)

   c. Moving force (but-for cause of access denial)

155. Defendant's conduct was objectively unreasonable. Monroe County demonstrated—through its October 21, 2025 motion for DRL § 235 access (NYSCEF Doc. #272)—that Monroe County knows what procedural prerequisites are required, possesses the capacity to comply, and has actual knowledge that accepting orders without verification creates constitutional liability. The right to access courts through established procedural mechanisms was clearly established, and Monroe County's deliberate choice

to protect its own procedural rights while denying procedural infrastructure
to county residents violated Plaintiff's clearly established constitutional
rights.

156.    As a direct and proximate result of Defendant's unconstitutional custom
and practice, Plaintiff has suffered and continues to suffer substantial injury.

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiff Joseph M. Fusco III respectfully requests that this Court:

## A. DECLARATORY JUDGMENT

1. Declare that Monroe County's custom and practice of accepting and docketing
   court orders without verifying that underlying motions exist violates the
   First Amendment's Petition Clause and the Fourteenth Amendment's Due
   Process Clause.

2. Declare that this systematic practice constitutes a policy, custom, or failure to
   train for which Monroe County is liable under *Monell v. Department of Social
   Services*, 436 U.S. 658 (1978).

## B. PERMANENT INJUNCTIVE RELIEF

3. Permanently enjoin Defendant Monroe County, its officers, agents,
   employees, and those acting in concert with them from accepting or
   docketing any court order unless personnel responsible for order
   acceptance first verify that a corresponding motion exists in the New

41

York State Courts Electronic Filing system (NYSCEF) or in the physical court file, and from administratively rejecting *pro se* filings without written orders stating grounds for rejection as required by CPLR § 2219(a).

4. Order Defendant Monroe County to implement, within ninety (90) days of judgment, the following procedures:

    a. Adopt and publish a written policy requiring verification that motions exist before orders are accepted and docketed;

    b. Implement mandatory training for all law clerks and personnel responsible for accepting court orders, covering:

        i. Requirements of CPLR § 2214 and related procedural rules;

        ii. Procedures for verifying motion prerequisites;

        iii. Consequences of accepting orders without procedural verification;

        iv. *Matter of Aho* and the legal principle that orders without motions are void;

    c. Implement a tracking system within NYSCEF or through other electronic means that:

        i. Links each order to its underlying motion;

        ii. Flags orders submitted without corresponding motions;

        iii. Enables supervisory review of compliance with verification requirements;

iv.    Provides public accessibility showing motion status for each

order;

d.  Establish supervisory review processes to ensure compliance with

verification requirements and to identify and correct failures.

5.  Order Defendant Monroe County to file written reports with this Court

demonstrating compliance with the above requirements at ninety (90) days,

six (6) months, twelve (12) months, and twenty-four (24) months following

entry of judgment.

6.  Retain jurisdiction to enforce this injunction and to modify its terms as

necessary to ensure constitutional compliance.

## C. DAMAGES

7.  Award Plaintiff nominal damages in the amount of ONE DOLLAR ($1.00) to

establish that Defendant violated Plaintiff's constitutional rights and to

establish Plaintiff as the prevailing party entitled to attorney fees under 42

U.S.C. § 1988.

8.  Award Plaintiff compensatory damages for harm directly caused by

Defendant's constitutional violations. Plaintiff has incurred substantial

damages during the 306-day period of denial of access to courts, including:

a.  Mental Health Treatment Costs: Plaintiff and his daughter have

required ongoing mental health treatment to address the trauma of the

306-day forced separation, representing costs beyond pre-existing

therapy needs and directly attributable to the constitutional violation.

b.  Lost Business Income: Plaintiff operated a home-based software engineering business from the marital residence. Displacement from the residence eliminated Plaintiff's ability to maintain his home office, client meetings, and business operations, resulting in substantial lost income.

c.  Housing Instability Costs: During the 306-day displacement, Plaintiff has relied on temporary accommodations with friends and acquaintances, vehicle-based living, and unstable housing arrangements. While these arrangements have prevented complete homelessness, they have imposed costs including vehicle maintenance and fuel for transportation between temporary locations, storage or loss of personal belongings, and the inability to establish stable residence necessary for employment and business operations.

d.  Loss of Property Due to Inability to Maintain Expenses: Plaintiff has attempted to maintain payments on the marital residence from which he was unconstitutionally excluded, but the financial strain of 306 days of housing instability combined with loss of home-based business income has made it impossible to keep current on mortgage, property taxes, insurance, and utilities. Plaintiff faces the loss of his only property due to the impossibility of maintaining expenses on a residence he cannot occupy while simultaneously securing stable housing and meeting basic survival needs. The constitutional violation

has thus resulted in both the immediate deprivation of property

through exclusion and the prospective loss of property ownership

through forced default.

  e.  The precise amounts of these damages will be established through

discovery and proven at trial. Based on preliminary review of

expenses, Plaintiff anticipates compensatory damages in the range of

$100,000-$150,000, representing concrete, measurable economic harm

directly caused by the 306-day denial of access to courts.

  f.  Such other compensatory damages as may be proven at trial.

### D. ATTORNEY FEES AND COSTS

9.  Award Plaintiff reasonable attorney fees and costs pursuant to 42 U.S.C. §

1988, as Plaintiff is the prevailing party in this action vindicating federally

protected civil rights.

### E. SUCH OTHER AND FURTHER RELIEF

10. Grant such other and further relief as this Court deems just and proper.

### VII. TRIAL BY COURT

Plaintiff respectfully requests that this matter be tried to the Court without a jury.

### NOTE REGARDING SEALED RECORDS

The documents supporting the factual allegations in this Complaint—including conference transcripts, court orders, and filings from the underlying matrimonial proceeding (Fusco v. Fusco, Index No. I2024000429, Monroe County Supreme Court)—are under seal pursuant to New York Domestic Relations Law § 235. On October 21, 2025, Defendant Monroe County filed a motion under DRL § 235 in the state matrimonial case seeking access to these sealed records specifically for use in defending this federal action. This motion demonstrates that: (1) the records are under seal; (2) Defendant has obtained access to them; and (3) Defendant recognizes that this federal action is based on orders and proceedings in the sealed matrimonial case.

These sealed documents are available to this Court for in camera review upon request, or Plaintiff will seek leave to file them under seal if the Court so orders.

## VIII. VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Joseph M. Fusco III, declare under penalty of perjury that I am the Plaintiff in this action; that I have read the foregoing Amended Complaint; that I know the contents thereof; and that the factual allegations contained herein are true and correct to the best of my knowledge, information, and belief.

I understand that false statements made in this verification are punishable as perjury under the laws of the United States.

Dated: November 12, 2025

Rochester, New York

_____

Joseph M. Fusco III, *Pro Se*
211 West Bloomfield Road
Pittsford, New York 14534
Telephone: (585) 317-1707
Email: hello@josephfus.co

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSEPH M. FUSCO III,

      *Plaintiff,*

   *v.*

MONROE COUNTY, NEW YORK,

     *Defendant.*

_____

25-CV-6505-MAV

CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2025, I filed the Amended Complaint for Deprivation of Civil Rights Under 42 U.S.C. § 1983 with the Clerk of the United States District Court for the Western District of New York via the Court's CM/ECF system, which will provide electronic notification and service upon all counsel of

    Zachary Tyler Nelson
    Monroe County Department of Law
    39 West Main Street, Room 307
    Rochester, NY 14614
    585-753-1413

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 12, 2025.

    Rochester, New York

_____
Joseph M. Fusco III, Pro Se
211 West Bloomfield Road
Pittsford, New York 14534
Telephone: (585) 317-1707
Email: hello@josephfus.co