UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSEPH M. FUSCO III,

      *Plaintiff,*

    *v.*

MONROE COUNTY, NEW YORK,

      *Defendant.*

25-CV-6505-MAV

NOTICE OF MOTION FOR
PRELIMINARY INJUNCTION

PLEASE TAKE NOTICE that, upon the annexed Memorandum of Law, Declaration of Joseph M. Fusco III sworn to November 17, 2025, the Amended Complaint filed November 12, 2025, and all prior proceedings in this action, Plaintiff Joseph M. Fusco III will move this Court pursuant to Rule 65 of the Federal Rules of Civil Procedure for entry of a preliminary injunction:

1. Requiring Monroe County to verify that written motions exist before accepting court orders affecting real property possession, parent-child relationships, or personal liberty;

2. Requiring Monroe County to implement verification procedures, training, and compliance tracking as detailed in the proposed order;

3. Requiring Monroe County to audit orders issued in the last 24 months in the three specified categories and provide notice to affected parties;

4. Awarding Plaintiff reasonable attorney fees and costs; and

5. Granting such other and further relief as the Court deems just and proper.

This motion is made on the grounds that:

1. Plaintiff has demonstrated a likelihood of success on the merits of his claim that Monroe County's practice of accepting court orders without verifying that underlying motions exist violates the First Amendment's Petition Clause and the Fourteenth Amendment's Due Process Clause by denying Plaintiff meaningful access to courts;

2. Plaintiff faces irreparable harm from ongoing separation from his twelve-year-old daughter, continued exclusion from his home and business, and the inadequacy of legal remedies to compensate for the loss of constitutional rights;

3. The balance of equities favors Plaintiff, as the burden of verification (60 seconds per order) is minimal compared to the constitutional violations Plaintiff continues to suffer; and

4. The public interest is served by ensuring that all Monroe County residents have meaningful access to courts through compliance with basic procedural requirements.

The grounds for this motion are more fully set forth in the accompanying Memorandum of Law.

SUPPORTING DOCUMENTS:

The following documents are submitted in support of this motion:

1. Memorandum of Law in Support of Motion for Preliminary Injunction;

2. Declaration of Joseph M. Fusco III, sworn to November 17, 2025;

3. Proposed Order Granting Targeted Preliminary Injunction;

4. Amended Complaint for Deprivation of Civil Rights Under 42 U.S.C. § 1983, filed November 12, 2025.

Dated: November 17, 2025

     Rochester, New York

Joseph M. Fusco III, *Pro Se*
211 West Bloomfield Road
Pittsford, New York 14534
Telephone: (585) 317-1707
Email: hello@josephfus.co

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSEPH M. FUSCO III,

       *Plaintiff,*

    *v.*

MONROE COUNTY, NEW YORK,

     *Defendant.*

25-CV-6505-MAV

MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

Plaintiff Joseph M. Fusco III, appearing *pro se*, respectfully submits this memorandum in support of his motion for a preliminary injunction.

## INTRODUCTION

Plaintiff seeks targeted preliminary relief requiring Monroe County to verify that written motions exist before accepting court orders affecting property possession, parent-child relationships, or personal liberty. For 311 days, Plaintiff has been denied access to all courts to challenge void orders because Monroe County's systematic practice of accepting orders without verification eliminated the procedural mechanisms for judicial review.

This motion presents a compelling case for preliminary relief under *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008): Plaintiff demonstrates likelihood of success on clearly established constitutional rights, irreparable harm from ongoing separation from his child and exclusion from his home, minimal

1

burden on Monroe County (60 seconds of verification per order), and strong public interest in ensuring 740,000 Monroe County residents have meaningful court access.

## LEGAL STANDARD

To obtain preliminary relief, Plaintiff must establish: (1) likelihood of success on the merits; (2) irreparable harm absent relief; (3) balance of equities in his favor; and (4) public interest served by injunction. *Winter*, 555 U.S. at 20. The showing required on each factor "is inversely proportional to the strength of the other factors." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010).

## ARGUMENT

### I. LIKELIHOOD OF SUCCESS ON THE MERITS

#### A. Access to Courts Claim Under Christopher v. Harbury

Plaintiff establishes all four elements required for access-to-courts claims under *Christopher v. Harbury*, 536 U.S. 403, 415 (2002):

Nonfrivolous Underlying Claim: Orders issued without required motions are void under New York law. *Matter of Aho v. Aho*, 39 N.Y.2d 241, 248 (1976) ("an order which was made without a motion, where a motion was required, is a nullity"). The absence of motions is objectively verifiable through NYSCEF docket inspection. (Am. Compl. ¶¶ IV.C; Fusco Decl.    III.)

2

Official Acts Frustrated Litigation: Monroe County clerks performing ministerial functions accepted orders without verifying motions existed, eliminating the procedural infrastructure for judicial review: no motion to oppose, no motion decision to appeal, no record for appellate consideration, no notice of entry triggering appeal deadlines. *Antoine v. Byers & Anderson*, Inc., 508 U.S. 429, 432 (1993) (clerk verification is "ministerial task"). (Am. Compl.    IV.E; Fusco Decl. VI.D.)

No Alternative Remedy: Plaintiff exhausted all forums over 311 days. State trial court blocked by filing restrictions and administrative rejection of pro se filing. State appellate court dismissed Article 78 and denied CPLR § 5704(a) applications. Bankruptcy court declined jurisdiction. As of November 10, 2025, zero pending state court matters remain. (Am. Compl.    IV.E; Fusco Decl. ¶¶ IV)

Actual Injury: 311 days property exclusion eliminating sole business location (zero revenue since January 10, 2025); 34 days separation from child despite Attorney for Child's report that daughter wants contact and therapist recommends it. (Am. Compl.    IV.E; Fusco Decl.    V.)

All *Christopher* elements are satisfied.

### B. Monell Liability

Monroe County is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for maintaining a systematic custom of accepting orders without verification,

demonstrated through: absence of verification policies, training, tracking systems, or quality control affecting multiple case types and judges over years. (Am. Compl. ¶¶ IV.B, IV.F.)

Monroe County has actual knowledge proven through its October 21, 2025 sworn court filing explicitly stating Plaintiff's federal claims are "based on orders and proceedings in this matrimonial action" and attaching Plaintiff's federal complaint as exhibits. (Am. Compl.    IV.D; Fusco Decl.    VI.B.) Despite 28 days of actual knowledge, Monroe County continued the practice (accepting October 14 Order of Protection without motion) and allocated resources to defense rather than implementing verification. (Am. Compl.    IV.D; Fusco Decl.    VI.C.)

This deliberate choice with actual knowledge, demonstrated capacity (procedurally perfect October 21 motion), and minimal burden constitutes deliberate indifference. *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).

### C. Jurisdiction and Abstention

Ex parte Young: This Court may order prospective ministerial compliance. *Ex parte Young*, 209 U.S. 123, 155-56 (1908). The violation is ongoing (Monroe County accepted order without motion on October 14, 2025, during this litigation). Relief is prospective only (verify motions before accepting future orders). Verification is ministerial, requiring no legal judgment. *Antoine*, 508 U.S. at 432. (Fusco Decl. VI.D.)

4

Rooker-Feldman: Not applicable. Plaintiff challenges ministerial verification failures, not judicial decisions. No review of state court judgment correctness is sought. The claim is "independent" of state judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005).

Younger: Not applicable. No ongoing state proceeding exists where Plaintiff can raise claims. All state remedies exhausted. Younger applies only when state proceedings provide "adequate opportunity to raise federal claims." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013). After 311 days and zero pending state matters, no adequate opportunity exists.

## II. IRREPARABLE HARM

Plaintiff faces three forms of irreparable harm absent preliminary relief:

Loss of Fundamental Parental Rights: 34 days separation from twelve-year-old daughter during irreplaceable formative years. "The interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Time lost cannot be restored by damages. (Fusco Decl.    V.A, E.)

Property and Business Loss: 311 days exclusion from home/sole business location. Zero business revenue since January 10, 2025. Facing property loss due to inability to maintain payments while displaced. "The loss of substantial business . . . satisfy

the irreparable injury requirement." *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999). (Fusco Decl.    V.B.)

Denial of Constitutional Rights: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Money damages cannot remedy 311 days of complete denial of court access. (Fusco Decl.    V.E.)

### III. BALANCE OF EQUITIES

The balance tips sharply in Plaintiff's favor. Monroe County's burden is 60 seconds of verification per order—a database query. Monroe County demonstrated capacity to comply through its procedurally perfect October 21, 2025 motion. (Fusco Decl. ¶¶ VI.A, VI.D.)

Against this minimal burden: 311 days of ongoing constitutional deprivation, parental separation, property exclusion, and business closure. Monroe County has actual knowledge its practice creates federal liability, yet chose defense over correction. (Fusco Decl. ¶¶ VI.B, VI.C.)

### IV. PUBLIC INTEREST

"When the government is a party, the balance of equities and public interest factors merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The public interest strongly favors relief:

Constitutional Protection: "It is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). The practice affects all 740,000 Monroe County residents seeking judicial relief.

Judicial Economy: Verification prevents duplicative proceedings, orders void under Matter of Aho, and inefficient collateral challenges. Simple verification prevents systemic inefficiencies. (Fusco Decl.    VII.)

Narrowly Tailored Relief: The proposed order applies only to three categories (property, parental rights, liberty), implements phased 90-day compliance, includes emergency carveout, and automatically sunsets at 95% compliance for 12 months. (Proposed Order §§ 1, 4, 5, 6.) This is temporary accountability, not permanent oversight.

CONCLUSION

All four Winter factors are satisfied. The proposed order provides targeted, implementable relief with minimal burden and automatic sunset provisions. Plaintiff respectfully requests preliminary injunctive relief.

Dated: November 17, 2025

      Rochester, New York

_____

Joseph M. Fusco III, *Pro Se*
211 West Bloomfield Road
Pittsford, New York 14534
Telephone: (585) 317-1707
Email: hello@josephfus.co

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSEPH M. FUSCO III,

     *Plaintiff,*

   *v.*

MONROE COUNTY, NEW YORK,

     *Defendant.*

25-CV-6505-MAV

DECLARATION OF
JOSEPH M. FUSCO III

---

I, Joseph M. Fusco III, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

## I. IDENTITY AND COMPETENCE

1. I am the Plaintiff in this action.

2. I am over eighteen years of age and competent to make this Declaration.

3. I have personal knowledge of the facts stated herein and could testify to them if called as a witness.

4. I am a software engineer who designs large-scale systems, which informs my recognition of systematic process failures.

## II. THE CANARY IN THE COAL MINE

5. I am a party to *Fusco v. Fusco*, Index No. I2024000429, pending in Monroe County Supreme Court.

1

6. All filings in that case are publicly accessible through the New York State Courts Electronic Filing system ("NYSCEF").

7. I have reviewed the complete NYSCEF docket in that case.

### III. ORDERS ISSUED WITHOUT WRITTEN MOTIONS

#### A. The January 10, 2025 Exclusive Use Order

8. On January 10, 2025, Judge Gail A. Donofrio issued an order granting my spouse exclusive use of the marital residence at 211 West Bloomfield Road, Pittsford, New York.

9. That order directed me to "immediately vacate the marital home."

10. The order was docketed as NYSCEF Document #99.

11. I examined all NYSCEF documents filed between October 8, 2024 and January 10, 2025—documents numbered #55 through #99.

12. No written motion for exclusive use appears in those documents.

13. No Notice of Motion appears, no supporting papers appear, and no factual affidavit appears.

14. The order issued during a conference based on an oral application without prior written notice.

#### B. The October 14, 2025 Order of Protection

15. On October 14, 2025, Judge John B. Gallagher Jr. issued an Order of Protection directing complete stay-away and no-contact between me and my twelve-year-old daughter.

16. The order was docketed as NYSCEF Document #270.

17. I examined the entire NYSCEF docket from the case's inception through the present.

18. No written motion seeking an Order of Protection appears anywhere in the docket.

19. The conference transcript reflects Judge Gallagher stating: "there was no request for an order of protection by anybody in this courtroom today that I'm aware of... I have ordered it... So nobody here besides me."

20. This confirms the order was issued *sua sponte* without any party requesting it and without any underlying written motion.

### C. Monroe County Accepted These Orders

21. Both orders were submitted to Monroe County personnel responsible for accepting and docketing court orders.

22. Monroe County personnel accepted both orders and entered them into the official court record.

23. In both instances, Monroe County personnel failed to verify that written motions existed as required by CPLR § 2214.

24. This declaration challenges Monroe County's ministerial verification failures, not the correctness or wisdom of any judicial decision. The specific orders are

factual evidence of systematic procedural failures, not requests for federal
review of state court judgments.

## IV. EXHAUSTION OF ALL AVAILABLE REMEDIES

### A. State Trial Court: Filing Restrictions

25. Judge Gallagher imposed filing restrictions prohibiting me from filing papers
without prior judicial permission.

26. On October 30, 2025, I filed a Notice of Intent to Proceed *Pro Se* to challenge
the void orders.

27. Monroe County Clerk accepted the filing at 11:06 AM and filed it
electronically as NYSCEF Document #311.

28. At 1:30 PM the same day, Monroe County administratively rejected the filing.

29. The rejection notation stated only "Permission required to eFile."

30. No written order explaining the rejection was issued.

31. No legal basis was stated and no process for obtaining "permission" was
provided.

32. I cannot file motions in state trial court.

### B. State Appellate Court: Dismissed

33. I filed an Article 78 proceeding in the Appellate Division, Fourth Department
(Index No. OP-25-01290).

34. The Appellate Division dismissed the proceeding and directed me to seek relief by appeal.

35. I cannot appeal because filing restrictions prohibit appeals without judicial permission, which has been denied.

36. The Appellate Division directed me to a remedy that existing restrictions make unavailable.

## C. CPLR § 5704 Applications: Denied

37. On November 3, 2025, I filed a CPLR § 5704(a) application seeking Appellate Division acceptance of my Order to Show Cause or a written order explaining rejection.

38. On November 6, 2025, I filed a second CPLR § 5704(a) application seeking to vacate a void support order.

39. Justice Stephen K. Lindley declined both applications on November 10, 2025.

40. As of today, I have zero pending applications, motions, or matters in any state court forum.

## D. Bankruptcy Court: Abstained

41. I filed Chapter 7 bankruptcy on May 15, 2025 (Case No. 2-25-20363-CLB, Western District of New York).

42. The bankruptcy court declined jurisdiction over the state court orders, deferring to state court authority over domestic relations matters.

### E. Federal District Court: Leave to Amend Granted

43. I filed the initial complaint in this case on September 23, 2025.

44. This Court dismissed the complaint on October 30, 2025, but granted leave to amend, finding I "could potentially state viable claims."

45. I filed my Amended Complaint on November 12, 2025.

### F. Summary of Exhaustion

46. I have attempted to obtain judicial review through state trial court, state appellate court, bankruptcy court, and federal court.

47. All attempts have been blocked by filing restrictions, administrative rejections, dismissals, or abstention.

48. I have been denied access to all courts to challenge these orders for the entire period since they were issued: three hundred eleven (311) days for the January 10, 2025 exclusive use order and thirty-four (34) days for the October 14, 2025 Order of Protection.

49. No adequate alternative remedy exists.

## V. IRREPARABLE HARM OCCURRING NOW

### A. Separation from Daughter

50. I have been separated from my twelve-year-old daughter for thirty-four (34) days pursuant to the October 14, 2025 Order of Protection.

51. On October 16, 2025, the Attorney for the Child filed a letter stating my daughter "would very much like to see her father."

52. The Attorney for the Child reported that my daughter's therapist assessed that supervised contact "could be both safe and therapeutically beneficial."

53. Despite my daughter's expressed wishes and her therapist's clinical recommendation, the Order of Protection prevents all contact.

54. Each day of separation during my daughter's childhood is irreplaceable.

### B. Property Deprivation

55. I have been excluded from my home for three hundred eleven (311) days pursuant to the January 10, 2025 exclusive use order.

56. The residence at 211 West Bloomfield Road serves as both my home and the sole location of my software engineering business, Whitetail Development, Inc.

57. Since January 10, 2025, my business has earned zero revenue because it cannot operate without access to its only location.

58. I have attempted to maintain mortgage payments on the property I cannot occupy.

59. The financial strain of displacement combined with loss of business income has made maintaining those payments impossible.

60. I face loss of the property due to inability to maintain expenses while excluded from it.

### C. Housing Instability

61. Since January 10, 2025, I have been without stable housing.

62. I have relied on temporary accommodations, vehicle-based living, and unstable arrangements.

63. This instability has prevented me from establishing a permanent address necessary for employment and business operations.

### D. Causal Connection

64. These harms flow directly from my inability to access any court to challenge the void orders.

65. Had I been able to challenge the orders through normal procedures, enforcement might have been stayed, orders might have been vacated, or alternative relief might have been provided.

66. Because Monroe County's practice eliminated procedural mechanisms for judicial review, these harms have continued for thirty-four (34) days and three hundred eleven (311) days respectively.

67. The harms continue to worsen daily.

### E. Inadequacy of Legal Remedies

68. No amount of money damages can restore the irreplaceable time with my twelve-year-old daughter during these formative years of her childhood. Financial compensation cannot recreate the parent-child bond being severed

or compensate for the developmental milestones I am missing. Money cannot compensate for the denial of my constitutional right to access courts—a right fundamental to our system of ordered liberty. The harm from ongoing exclusion from all judicial forums is a continuing constitutional violation that legal damages cannot adequately remedy. Only immediate restoration of access to courts can prevent further irreparable injury.

## VI. MONROE COUNTY'S KNOWLEDGE AND CAPACITY

### A. Monroe County Filed a Procedurally Perfect Motion

69. On October 21, 2025, Monroe County filed a motion in my matrimonial case seeking access to sealed records.

70. Monroe County's motion (NYSCEF Documents #272-283) was filed as a non-party intervention.

71. The motion included written Notice of Motion, supporting papers, seven exhibits, memorandum of law, proposed order, and proper service.

72. The motion complied fully with CPLR § 2214 and demonstrated comprehensive institutional knowledge of proper procedure.

### B. Monroe County Knows About This Federal Case

73. Monroe County's motion explicitly stated that my federal claims are "based on orders and proceedings in this matrimonial action."

74. Monroe County attached the complete federal court docket and all pleadings from this case as exhibits.

75. This proves Monroe County read and understood my allegations that Monroe County accepts orders without verifying motions exist.

76. Monroe County's motion constitutes formal admission that Monroe County knows orders in this case form the basis of federal constitutional claims.

### C. Monroe County Chose Defense Over Correction

77. Between September 23, 2025 (when I filed this federal case) and October 21, 2025 (when Monroe County filed its motion), Monroe County had twenty-eight days of actual knowledge.

78. During those twenty-eight days, Monroe County continued accepting orders without verification, including the October 14, 2025 Order of Protection.

79. Monroe County allocated resources to obtain records for federal court defense.

80. Monroe County allocated zero resources to implementing verification procedures to prevent future violations.

81. Monroe County chose to defend the practice rather than correct it.

### D. Verification is Ministerial, Not Judicial

82. Verifying whether a motion exists requires no legal judgment or discretion. A written motion either exists in NYSCEF or the physical file, or it does not. This is an objective, binary determination requiring approximately 60 seconds for electronic files. The Supreme Court has held that 'a court clerk's

screening of papers to ensure compliance with procedural rules is a

ministerial task,' not a judicial function. Antoine v. Byers & Anderson, 508

U.S. 429, 432 (1993). Monroe County's law clerks performing this ministerial

verification would exercise no more discretion than verifying that filing fees

were paid or that documents are properly formatted—routine administrative

tasks performed thousands of times daily in courts nationwide.

## VII. SYSTEMATIC PATTERN

83. The acceptance of orders without verification involved multiple Monroe
    County personnel.

84. The failures occurred on multiple dates involving multiple judges.

85. The failures affected multiple types of relief including property rights,
    parental rights, and support obligations.

86. This repetition across different employees, different dates, and different case
    types demonstrates systematic institutional failure.

87. The pattern is not isolated individual error but reflects absence of
    institutional procedures for verification.

88. The phantom order problem wastes judicial resources. When judges
    unknowingly grant relief previously denied by other judges, courts expend
    time on duplicative proceedings. When orders lack motions creating appellate
    records, courts face inefficient collateral challenges rather than streamlined
    appeals. When procedural defects render orders void under Matter of Aho,

judicial time spent issuing those orders is wasted. Simple verification at the point of order acceptance—60 seconds per order—prevents these inefficiencies from cascading through the system.

## VIII. THE PHANTOM ORDER AND DOCUMENTATION GAP PROBLEM

89. Prior to the January 10, 2025 exclusive use order, similar relief had been previously addressed by the court.

90. The January 10 order was granted without any indication to Judge Donofrio that this relief had been previously considered.

91. No documentation in the NYSCEF filing indicated whether exclusive use had been previously sought, granted, or denied.

92. This "phantom order" problem—where previously addressed relief reappears without disclosure—is enabled by Monroe County's failure to verify not just whether motions exist, but whether orders represent new or recycled relief.

93. Without requiring disclosure of prior attempts to obtain the same relief, parties can judge-shop by presenting old requests to new judges.

94. This undermines judicial economy and enables manipulation of court processes.

## IX. NEED FOR SYSTEMIC REMEDIATION

95. Based on my experience and review of public records, I believe numerous other Monroe County residents have orders affecting fundamental rights that were entered without proper motions.

96. A systemic notification and cure process would serve judicial economy by allowing voluntary correction of procedural defects without requiring individual challenges to each order.

97. Many affected parties may be unaware their orders lack procedural foundation, as discovery of this defect requires examining the entire NYSCEF docket—a task most litigants do not undertake.

98. I am prepared to assist in identifying patterns of procedural defects if that would aid remediation efforts.

## X. PROPOSED REMEDIATION WOULD NOT DISRUPT VALID ORDERS

99. I understand that immediate invalidation of all procedurally defective orders could harm vulnerable parties who obtained legitimate protection.

100. A notification and cure period would allow parties who obtained orders through oral applications to file written motions nunc pro tunc, preserving valid relief while correcting procedural defects.

101. This approach respects both the need for procedural regularity and the protection of parties who obtained emergency relief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: November 17, 2025

       Rochester, New York

Joseph M. Fusco III, *Pro Se*
211 West Bloomfield Road
Pittsford, New York 14534
Telephone: (585) 317-1707
Email: hello@josephfus.co

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSEPH M. FUSCO III,

     *Plaintiff,*

  *v.*

MONROE COUNTY, NEW YORK,

     *Defendant.*

25-CV-6505-MAV

[PROPOSED]
ORDER GRANTING TARGETED
PRELIMINARY INJUNCTION

---

This matter comes before the Court on Plaintiff's Emergency Motion for Preliminary Injunction. Having reviewed the pleadings, declarations, and applicable law, the Court makes the following findings and orders.

## FINDINGS OF FACT

1. Monroe County accepts court orders without verifying that corresponding written motions exist in NYSCEF or physical court files.

2. This practice has occurred across multiple judges and case types over an extended period.

3. Monroe County maintains no policies, training, tracking systems, or supervisory review for motion verification.

4. Verification of whether a motion exists is a ministerial act requiring no legal judgment—a motion either exists or does not.

5. Verification requires approximately 60 seconds for electronic files and under 3 minutes for physical files.

1

6. Monroe County demonstrated institutional capacity to comply with CPLR procedural requirements by filing a procedurally perfect motion on October 21, 2025, with full CPLR § 2214 compliance including Notice of Motion, supporting papers, seven exhibits, memorandum of law, and proper service (Amended Complaint ¶¶58-88). That motion explicitly acknowledged Plaintiff's federal claims are "based on orders and proceedings in this matrimonial action" (Amended Complaint ¶61), proving actual knowledge that the challenged practice created federal liability. Monroe County continued accepting orders without verification during this same period (Amended Complaint ¶¶71-80), demonstrating deliberate choice to defend the practice rather than implement corrective procedures.

## CONCLUSIONS OF LAW

1. Accepting orders without verifying motions eliminates procedural mechanisms for judicial review, denying access to courts. *Christopher v. Harbury*, 536 U.S. 403 (2002).

2. Monroe County's systematic practice constitutes deliberate indifference under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

3. This Court has authority under *Ex parte Young*, 209 U.S. 123 (1908), to order prospective ministerial compliance and ancillary relief necessary to remedy the access-to-courts violation.

2

IT IS HEREBY ORDERED:

1.  Effective immediately, Monroe County SHALL verify that written motions exist before accepting orders that:

    a.  Affect real property possession;

    b.  Alter parent-child relationships;

    c.  Restrict personal liberty.

2.  Verification SHALL consist of:

    a.  Checking NYSCEF for the motion;

    b.  If not found electronically, checking physical file;

    c.  If no motion exists, returning order to submitting party with explanation that motion documentation is required.

3.  Effective immediately, parties submitting proposed orders SHALL include certification stating:

    a.  □ This specific relief has not been previously addressed in this case; OR

    b.  □ This relief was previously addressed on [date] in [NYSCEF Doc #___] with the following outcome: _____; changed circumstances justifying reconsideration: _____;

    c.  Submitting party certifies that to the best of their knowledge after reasonable inquiry, these representations are true and accurate;

    d.  Law clerks are not required to verify the substance of these certifications but may reject submissions lacking required certifications;

    e. False or misleading certifications may subject counsel to sanctions under 22 NYCRR § 130-1.1 and Fed. R. Civ. P. 11.

4. Emergency orders may bypass verification ONLY when:

    a. Judge certifies "IMMEDIATE PHYSICAL SAFETY THREAT";

    b. Order is marked "EMERGENCY - 72 HOUR LIMIT";

    c. Motion must be filed within 72 hours.

5. Implementation SHALL proceed as follows:

    a. Days 1-7: Post notice of requirements and designate coordinator;

    b. Days 8-30: Provide 15-minute training and distribute verification checklist;

    c. Days 31-60: Begin tracking compliance rates;

    d. Days 61-90: Review implementation and develop assistance materials.

6. This Order SHALL automatically terminate upon:

    a. 95% compliance for 12 consecutive months;

    b. Final judgment in this case;

    c. Further order of this Court.

7. Upon achieving 95% compliance for specified periods:

    a. Notice requirements sunset after 90 days;

    b. Training requirements sunset after 6 months;

    c. All requirements sunset after 12 months.

8. Non-compliance may result in:

    a. Award Plaintiff reasonable attorney fees incurred in seeking enforcement under 42 U.S.C. § 1988;

    b. After written notice specifying deficiencies and 30 days to cure, appoint a federal compliance monitor at County expense if compliance falls below 85% for two consecutive months;

    c. After written notice and opportunity to be heard, impose civil contempt sanctions as appropriate under the Court's inherent authority.

    d. Isolated errors during good-faith implementation shall not constitute non-compliance warranting sanctions.

9. This Order does NOT:

    a. Invalidate any existing order;

    b. Require legal analysis or judicial discretion;

    c. Apply beyond the three specified categories.

10. Either party may seek modification upon showing changed circumstances.

11. Compliance reports SHALL be filed quarterly (every 3 months) with the Court until sunset, beginning 90 days after entry of this Order.

12. To remedy the ongoing access-to-courts violation by ensuring that affected parties have notice and opportunity to seek appropriate relief through state court procedures, Monroe County SHALL:

    a. Audit orders issued in the last 24 months in the three specified categories to identify instances where orders were accepted without corresponding verified motions in NYSCEF or physical files;

b.  Within 90 days of this Order, provide written notice to all parties in

cases where orders lack verified underlying motions, stating

substantially as follows:

> "NOTICE OF SYSTEMATIC PROCEDURAL DEFECT
>
> A federal court has determined that Monroe County systematically accepted court orders without verifying that required written motions existed, in violation of CPLR § 2214(a) and the First and Fourteenth Amendments to the United States Constitution.
>
> Our records indicate that an order in your case dated [DATE] regarding [SUBJECT] (docketed as NYSCEF Doc. #___) was accepted without verification of a corresponding motion in the court file.
>
> THIS NOTICE DOES NOT:
>
> Declare your order void or invalid
>
> Constitute federal court review of state court decisions
>
> Affect the validity of the order under state law
>
> Create any presumption regarding the order's validity
>
> Under New York law (Matter of Aho v. Aho, 39 N.Y.2d 241 (1976)), orders issued without required motions may be voidable. Whether any particular order is void and what relief is available must be determined by state courts applying New York law.
>
> If you believe you were denied access to courts or due process, you may:
>
> - Verify whether a motion exists by reviewing NYSCEF documents in your case;
> - Consult with legal counsel regarding available state law remedies;
> - Seek appropriate relief through New York state court procedures, which may include motions under CPLR § 5015, Article 78 proceedings, or nunc pro tunc relief.

6

> This notice is provided solely to ensure you are aware of the systematic procedural defect and have opportunity to seek relief through proper channels. State courts retain exclusive authority to determine the validity of orders under New York law."

c. Provide issuing judges with informational notice identifying orders in their cases that were accepted without verified motions, to enable judges to address any concerns about case management or procedural compliance;

d. Establish expedited procedures for parties seeking to verify motion status, obtain copies of missing motion papers, or file nunc pro tunc motions;

e. File a statistical report with this Court within 120 days showing:

  - Total orders audited in each category

  - Number accepted without verified motions

  - Percentage breakdown by judge, case type, and time period

  - Number of notices sent to parties

  - Description of expedited procedures established

f. This audit and notification requirement is ancillary relief necessary to remedy the access-to-courts violation found by this Court. The systematic practice of accepting orders without verification denied affected parties notice and opportunity to be heard. Notification ensures parties are aware of the procedural defect and may seek appropriate state court relief if they choose. This Court makes no determination regarding the validity of any specific order under New

York law—such determinations remain within the exclusive province of New York state courts applying New York procedural and substantive law.

13. This Order establishes prospective verification procedures and provides ancillary relief necessary to remedy the ongoing constitutional violation. It does not:

    a.  Declare any existing order void, voidable, or invalid;

    b.  Review, reverse, or modify any state court judgment;

    c.  Create a private right of action to challenge past orders;

    d.  Direct state courts to take any action or reach any conclusion;

    e.  Affect parties' rights to seek relief under state law procedures;

    f.  Limit this Court's jurisdiction over Plaintiff's claims in this case.

14. The validity of any specific order and the availability of remedies remain matters of state law to be determined by state courts under applicable New York procedures. This Court's role is limited to enjoining prospective ministerial conduct and providing notice of the systematic violation to enable parties to seek state court relief if appropriate.

IT IS SO ORDERED.

Dated: _____, 2025

_____
Hon. Meredith A. Vacca
United States District Judge
Western District of New York

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSEPH M. FUSCO III,

       *Plaintiff,*

    *v.*

MONROE COUNTY, NEW YORK,

       *Defendant.*

25-CV-6505-MAV

CERTIFICATE OF SERVICE

---

I hereby certify that on November 17, 2025, I filed the following documents with the Clerk of the United States District Court for the Western District of New York via the Court's CM/ECF system:

1. Notice of Motion for Preliminary Injunction
2. Memorandum of Law in Support of Motion for Preliminary Injunction
3. Declaration of Joseph M. Fusco III
4. [Proposed] Order Granting Targeted Preliminary Injunction

The CM/ECF system will provide electronic notification and service upon counsel for Defendant:

    Zachary Tyler Nelson, Esq.
    Monroe County Department of Law
    39 West Main Street, Room 307
    Rochester, NY 14614

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 17, 2025.

    Rochester, New York

---

Joseph M. Fusco III, Pro Se
211 West Bloomfield Road
Pittsford, New York 14534
Telephone: (585) 317-1707
Email: hello@josephfus.co