UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Joseph M. Fusco III,

*Plaintiff,*

v.

Monroe County et al.,

*Defendants.*

Case No. 6:25-cv-06505

**Memorandum of Law in Support of Defendant's Pre-Answer Motion to Dismiss under Rules 12(b)(1) and 41(b)**

## Contents

Preliminary Statement ........................................................................................................... 3

Statement of the Case ........................................................................................................... 3

Legal Standards ..................................................................................................................... 4

    I.   Rule 12(b)(1) ............................................................................................................... 4

    II.  Rule 41(b) .................................................................................................................... 5

    III. Leave to Amend .......................................................................................................... 5

Argument ............................................................................................................................... 6

    I.   This Court still lacks subject-matter jurisdiction, making dismissal appropriate under Rule 12(b)(1). ........................................................................................................... 6

        A. *Rooker-Feldman* Doctrine ...................................................................................... 6

        B. *Younger* Abstention ............................................................................................... 9

    II.  Even if this Court had subject-matter jurisdiction, dismissal would be appropriate under Rule 41(b). ....................................................................................................... 13

    III. Leave to Amend ........................................................................................................ 15

Conclusion .......................................................................................................................... 16

## PRELIMINARY STATEMENT

Defendant Monroe County moves to dismiss Plaintiff's amended complaint under Rules 12(b)(1) and 41(b). Because further amendment is unlikely to be productive, Defendant further requests that this Court dismiss Plaintiff's amended complaint without leave to amend.

## STATEMENT OF THE CASE

In September 2025, over 18 months after the start of a divorce and custody case in state court, Plaintiff filed suit in this Court against Monroe County, the Monroe County Clerk, and the Monroe County Sheriff, seeking to undo orders issued by the state court concerning his marital residence. ECF No. 1. He then moved for a temporary restraining order and for a preliminary injunction. ECF Nos. 3, 7. The County, Clerk, and Sheriff responded and moved to dismiss under Rules 12(b)(1), (6), and (7). ECF No. 6.

On October 21, the County moved to unseal the matrimonial records in the underlying state-court action. Exh. 3. On October 27, the state court scheduled a hearing on that motion for November 21, 2025. *Id*.

On October 30, 2025, this Court granted the defendants' motion to dismiss under Rule 12(b)(1), holding that subject-matter jurisdiction was lacking under both the *Rooker-Feldman* doctrine and *Younger* abstention. ECF No. 12. The decision mooted Plaintiff's motions for injunctive relief. *Id.* at 15. The Court declined to reach the defendants' other arguments. *Id.* at 11.

"Although the Court [found] that it [was] unlikely that Plaintiff can allege additional facts to state a valid claim," it gave him an opportunity to amend, provided he complied with the Court's instructions. *Id*. at 11–15. Plaintiff then filed an amended complaint and moved for a preliminary injunction. ECF Nos. 13–14. Defendant Monroe County now moves to dismiss Plaintiff's amended complaint under Rules 12(b)(1) and 41(b).

**LEGAL STANDARDS**

## I.     Rule 12(b)(1)

"When a party moves for dismissal under Rule 12(b)(l) and on other grounds, courts consider the Rule 12(b)(l) challenge first." *Burton v. Wells Fargo Bank, N.A.,* 738 F. Supp. 3d 272, 286 (E.D.N.Y. 2024) (quotation omitted). "This is because if a court determines that it lacks subject-matter jurisdiction, then the defendant's 'other defenses and objections become moot and do not need to be determined.'" *Id.* (quoting *Daly v. Citigroup Inc.,* 939 F.3d 415, 426 (2d Cir. 2019)).

In reviewing a motion to dismiss under Rule 12(b)(l), courts must "accept as true all material factual allegations in the complaint," and refrain from "drawing from the pleadings inferences favorable to the party asserting jurisdiction." *Id.* (quotation omitted). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* at 287 (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)). "District courts must interpret a *pro se* complaint to raise the strongest claims that it suggests." *Id.* (quoting *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011)).

"The party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction." *Id.* at 286 (quoting *Linardos v. Fortuna,* 157 F.3d 945, 947 (2d Cir. 1998)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(l) a district court may consider evidence outside the pleadings." *Id.* (quotation omitted). "Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking." *Id.* (quotation omitted);

4

*see also Carlisle v. Bd. of Trs. of Am. Fed'n of New York State Teamsters Conf Pension & Ret. Fund,* No. 8:21-CV-00455 (BKS/DJS), 2025 WL 438123, at *8 (N.D.N.Y. Feb. 7, 2025).

## II.    Rule 41(b)

Federal Rule of Civil Procedure 41(b) authorizes a district court to dismiss an action or claim "if the plaintiff fails . . . to comply with . . a court order." *Park v. Kim*, 91 F.4th 610, 612 (2d Cir. 2024). When determining Rule 41(b) motions, courts consider five factors: (i) the duration of the plaintiff's failure to comply with the court order; (ii) whether plaintiff was on notice that failure to comply would result in dismissal; (iii) whether the defendants are likely to be prejudiced by further delay in the proceedings; (iv) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (v) whether the judge has adequately considered a sanction less drastic than dismissal. *Id.* at 612–13 (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)). "No single factor is generally dispositive." *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (citation omitted).

## III.    Leave to Amend

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, "unless [it] can rule out any possibility, however unlikely . . ., that an amended complaint would succeed in stating a claim." *Abbas v. Dixon,* 480 F.3d 646, 639 (2d Cir. 2007) (quotation omitted). But a court may deny leave to amend pleadings when any amendment would be futile. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993) (per curiam) ("Where it appears that granting leave to amend is unlikely to be productive[] . . . it is not an abuse of discretion to deny leave to amend.").

**ARGUMENT**

Plaintiff's amended complaint warrants dismissal, without leave to amend, under Rules 12(b)(1) and 41(b), because (1) the *Rooker-Feldman* doctrine and *Younger* abstention remain applicable, (2) Plaintiff violated this Court's order granting leave to amend, and (3) further leave to amend is unlikely to be productive.

**I.    This Court still lacks subject-matter jurisdiction, making dismissal appropriate under Rule 12(b)(1).**

In its Decision and Order, this Court concluded that "dismissal [was] warranted under Rule 12(b)(1) due to a lack of subject matter jurisdiction," based on the *Rooker-Feldman* doctrine and *Younger* abstention. ECF No. 12 at 6–11. That conclusion remains appropriate.

Despite Plaintiff's acknowledgment of the Court's conclusion, ECF No. 13 at ¶ 13, he has not alleged any facts that, if true, would establish that this Court has subject-matter jurisdiction. He asserts jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). *Id.* at ¶ 5. Both statutes grant jurisdiction over actions based on alleged deprivations of constitutional rights, which is the basis for Plaintiff's purported claims. But neither overcomes the *Rooker-Feldman* doctrine or *Younger* abstention. *See, e.g.*, *Beharry v. Metro. Transit Auth., New York City Transit*, 242 F.3d 364 (2d Cir. 2000) (dismissing a complaint relying on § 1331 and § 1342(a)(3) based on the *Rooker-Feldman* doctrine), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). To the extent that this Court could exercise jurisdiction under either statute, *Rooker-Feldman* and *Younger* instruct that it should abstain from doing so.

**A.    *Rooker-Feldman* Doctrine**

As this Court explained, federal courts "lack subject matter jurisdiction to review cases 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection

6

of those judgments.'" ECF No. 12 at 6 (quoting *Exxon Mobil,* 544 U.S. at 284). The *Rooker-Feldman* doctrine "applies where the federal-court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered." *Id.* (citing *DeRaffele v. Unified Ct. Sys. of New York,* No. 24-CV-1920 (CS), 2024 WL 1329355, at *5 (S.D.N.Y. Mar. 26, 2024) (citing *Vossbrinck v. Accredited Home Lenders, Inc.,* 773 F.3d 423, 426 (2d Cir. 2014))).

Plaintiff does not address the *Rooker-Feldman* doctrine in his amended complaint, but argues in his motion for a preliminary injunction that the doctrine is inapplicable because he "challenges ministerial verification failures, not judicial decisions." ECF No. 14 at 8.[1] That is identical to earlier argument, which this Court rejected. *See* ECF No. 12 at 7–8. Although he changed his requested relief—no longer requesting that prior state-court orders be ruled void and replaced with new orders—his underlying goal remains the same. He asks the Court to order Defendant to "[a]udit orders issued in the last 24 months . . . to identify instances where orders were accepted without corresponding verified motions in NYSCEF or physical files" and give notice to the affected parties stating that, among other things, the order likely violates the U.S. Constitution and that the order "may be voidable." ECF No. 14 at 30–32. Plaintiff further requests that this Court monitor the administration of the state courts and order the County to "[e]stablish expedited procedures for parties seeking to verify motion status, obtain copies of missing motion papers, or file nunc pro tunc motions." *Id.* at 32; *see also* ECF No. 13 at 41–42.

At bottom, Plaintiff asks this Court to order everything up to the line of declaring the orders

---

[1] Because ECF No. 14 contains several documents with inconsistent pagination, Defendant cites to the page numbers given in the CM/ECF-generated header.

in his matrimonial case void, without expressly doing so. He asks this Court, through an astonishing degree of policymaking intervention into the administration of state courts, to give him and the state-court judge in his case notice that the orders are likely unconstitutional and void as well. He does not ask this Court to declare the orders void; rather, he asks this Court to coerce the state court into reaching that conclusion.

This Court previously rejected Plaintiff's creative attempts at reframing his lawsuit. As before, Plaintiff "attempts to shift focus to 'ministerial activities.'" ECF No. 12 at 7. But he is "plainly seeking this Court's review and rejection of prior state-court judgments in his ongoing matrimonial action and subsequent actions that are directly and completely caused by the issuance of such judgments." *Id.* at 8. His claims remain barred by the *Rooker-Feldman* doctrine. *See, e.g., Gilmore v. Greene Cnty. Dep't of Soc. Servs.,* No. 07-CV-919, 2007 WL 4180749, at *2 (N.D.N.Y. Nov. 20, 2007) ("inferior federal courts have no authority to review judgments of state courts in judicial proceedings and that federal review, if any, can occur only by way of a certiorari petition to the Supreme Court"); *Botsas v. United States,* 5 Fed. App'x 69, 70 (2d Cir. 2001) *(Rooker-Feldman* doctrine applies where a district court's exercise of jurisdiction "would result in reversal or modification of a state court judgment"); *Smith v. D'Agostino,* No. 25-CV-1265-MA V, 2025 WL 2695439, at *4 (N.D.N.Y. Sept. 22, 2025) ("Plaintiffs' specific requests to enjoin and modify" state-court orders of protection and child custody "clearly implicate the *Rooker-Feldman* doctrine"). *Cf Wang v. Delphin-Rittmon,* 664 F. Supp. 3d 205, 214–15 (D. Conn. 2023) ("The problem for the defendants' *Rooker-Feldman* argument is obvious. Wang's amended complaint does not seek to hold the defendants liable for taking measures that were authorized by the state court order. To the contrary, he seeks to hold them liable for taking measures-including the forcible injection of Benadryl and the prolonged use of four-point restraints-that were *not* mentioned or

expressly authorized by any terms of the state court order."); *Dorce v. City of New York,* 2 F.4th 82, 105 (2d Cir. 2021).

> ### B.    *Younger* Abstention

Plaintiff's claims also remain barred by *Younger* abstention. As this Court explained, "[i]f a federal lawsuit implicates the way that New York courts manage their own . . . proceedings—a subject in which the states have an especially strong interest—a State's interest is most likely implicated, warranting abstention under *Younger*." ECF No. 12 at 9–10 (quotation marks and citations omitted). "The Second Circuit has 'determined that [a] state court order in a divorce and child custody proceeding fit[s] neatly under [that] *Younger* category.'" *Id.* at 10 (quoting *Cavanaugh v. Geballe,* 28 F.4th 428,434 (2d Cir. 2022). "When any of these types of proceedings are pending in state court, such as they are here, *Younger* abstention bars federal courts from ordering injunctive relief that interferes with the state court proceedings." *Id.* (citing *DeRaffele,* 2024 WL 1329355, at *4); *see People United for Children, Inc. v. City of New York,* 108 F. Supp. 2d 275, 290 n.6 (S.D.N.Y. 2000) ("State proceedings are pending for *Younger* purposes until all appellate court remedies have been exhausted.").

Plaintiff does not address *Younger* abstention in his amended complaint, but argues in his motion for a preliminary injunction that *Younger* does not apply because "[n]o ongoing state proceeding exists where Plaintiff can raise claims" and "[a]ll state remedies [have been] exhausted." ECF No. 14 at 8. He further argues that *Younger* abstention "applies only when state proceedings provide [an] 'adequate opportunity to raise federal claims.'" *Id.* (purportedly quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)).

As an initial matter, Plaintiff miscites, misquotes, and misrepresents the only authority provided in support of his argument. The argument relied upon by Plaintiff—that *Younger*

abstention applies if the state proceedings provide an "adequate opportunity to raise federal claims"—comes from an Eighth Circuit decision that *Jacobs* overruled. The Supreme Court made that clear:

> [T]he Eighth Circuit read this Court's precedent to require *Younger* abstention whenever "an ongoing state judicial proceeding . . . implicates important state interests, and . . . the state proceedings provide an adequate opportunity to raise [federal] challenges." 690 F.3d, at 867 (citing *Middlesex County Ethics Comm. v. Garden State Bar Assn.,* 457 U.S. 423, 432 (1982)).

*    *    *

> In holding that abstention was the proper course, the Eighth Circuit relied heavily on this Court's decision in *Middlesex. Younger* abstention was warranted, the Court of Appeals read *Middlesex* to say, whenever three conditions are met: There is (1) "an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) ... provide[s] an adequate opportunity to raise [federal] challenges." 690 F.3d, at 867 (citing *Middlesex,* 457 U.S., at 432).

*Jacobs*, 571 U.S. at 75–76, 81. The Court then reversed the Eighth Circuit's decision. *Id.* at 82.

There is an even more glaring problem with Plaintiff's argument: he lied. Plaintiff states that there is "[n]o ongoing state proceeding" in which he can raise claims, that there are "zero pending state matters," and that "[a]ll state remedies [have been] exhausted." ECF No. 14 at 8. That is not true. Plaintiff's matrimonial action remains ongoing. Indeed, when Plaintiff filed his amended complaint on November 12, 2025, he had notice that the state court had set a hearing on Defendant's motion to unseal for November 21, 2025. *See* Exhibit 3 (showing that the state court filed the updated notice of the hearing on October 27, 2025). As discussed in the accompanying affidavit, counsel for Defendant spoke with counsel for Mrs. Fusco and with Judge Gallagher's law clerk on November 19, 2025; they confirmed that the case is ongoing and that a trial date to determine child custody is set for January 2026.

Plaintiff's assertion that his state remedies have been exhausted is further contradicted by

his amended complaint. He quotes the state court addressing his potential to appeal the court's order: "Just so we're sure so the record is clear so if he appeals this—***he certainly can, I recommend that he appeals this*** . . . ." ECF No. 13 at ¶ 42 (emphasis added). Plaintiff admits that he attended that hearing. *Id.* at ¶ 40. So, accepting Plaintiff's allegations, he attended a hearing on October 14, 2025, at which the state court explicitly stated that he had a right to appeal the court's order. He does not allege that he attempted to appeal that order. *See id.* at ¶ 105 (discussing his attempted appeal of a different order issued on January 10, 2025). Yet he claims that his state remedies are all "exhausted." ECF No. 14 at 8.

As required by Rule 11(a), Plaintiff signed his second motion for a preliminary injunction and his amended complaint, thereby certifying that "to the best of [his] knowledge, information, and belief, . . . the factual contentions [asserted] have evidentiary support." FED. R. CIV. P. 11(b)(3). He alleged that his state remedies are exhausted, despite firsthand knowledge—indeed, encouragement from the state court—that he could pursue appellate remedies. He alleged that there are no ongoing state proceedings, despite his matrimonial action remaining active and awaiting trial.

Even absent the foregoing problems, Plaintiff's amended complaint makes it clear that *Younger* abstention is applicable. Indeed, the amended complaint warrants *Younger* abstention even more than the original complaint. Plaintiff originally requested "that order in his ongoing matrimonial case be barred from docketing or enforcement unless a written motion preceded them," which "implicated how the state court performs its judicial function and manages its proceedings," making *Younger* abstention applicable. ECF No. 12 at 10. Plaintiff seeks almost identical relief in his amended complaint, asking this Court to "[p]ermanently enjoin [Defendant], its officers, agents, employees, and those acting in concert with them from accepting or docketing

any court order unless personnel responsible for order acceptance first verify that a corresponding motion exists." ECF No. 13 at 41–42

He further requests that this Court make several substantial changes to the administration of the state courts by order requiring Defendant to:

- adopt and publish a written policy requiring verification that motions exist before orders are accepted and docketed;

- implement mandatory training for all law clerks and personnel responsible for accepting court orders, covering:

    o requirements of CPLR § 2214 and related procedural rules;

    o procedures for verifying motion prerequisites;

    o consequences of accepting orders without procedural verification;

    o *Matter of Aho* and the legal principle that orders without motions are void;

- implement a tracking system within NYSCEF or through other electronic means that:

    o links each order to its underlying motion;

    o flags orders submitted without corresponding motions;

    o enables supervisory review of compliance with verification requirements;

    o provides public accessibility showing motion status for each order;

- establish supervisory review processes to ensure compliance with verification requirements and to identify and correct failures; and

- file written reports with this Court demonstrating compliance with the above requirements at ninety (90) days, six (6) months, twelve (12) months, and twenty-four (24) months following entry of judgment.

*Id.* at 42–43.

Of particular importance is Plaintiff's request that this Court order Defendant to "establish supervisory review processes to ensure compliance with verification requirements and to identify and correct failures." *Id.* at 43. For one, such relief amounts to creating a secondary route to appeal

12

judicial orders, which, as discussed in Defendant's prior memorandum of law, violates core separation-of-powers principles. ECF No. 6-2 at 21.[2] Moreover, a "supervisory review process" designed to "identify and ***correct failures***" speaks of voiding or otherwise disposing of allegedly improper judicial orders. Although it is not clear what it means for the County to "correct failures"—i.e., fix a situation in which an order was issued without complying with procedural prerequisites—it seems that Plaintiff is attempting to create a process through which he may accomplish what he is otherwise prohibited from doing: having this Court invalidate state-court orders via orders directed at County staff.

This Court rejected Plaintiff's "strained" argument that he is targeting "administrative" or "ministerial" practices rather than judicial orders. ECF No. 12 at 11. In response, he has requested greater intervention by this Court into state-court administration. But such expanded intervention further justifies *Younger* abstention. Because Plaintiff's case "implicates the way that New York courts manage their own divorce and custody proceedings," *Younger* abstention remains appropriate. *Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015); *Skillings v. City of New York,* No. 21-CV-3034, 2023 WL 8531493, at *5 (E.D.N.Y. Jan. 19, 2023) (*Younger* abstention applies where lawsuit seeks declaratory and/or injunctive relief that would interfere with ongoing state custody proceedings) (collecting cases).

## II.    Even if this Court had subject-matter jurisdiction, dismissal would be appropriate under Rule 41(b).

In its October 30, 2025, Decision and Order, this Court granted Plaintiff leave to amend his complaint subject to several requirements. ECF No. 12 at 11–16. This Court ordered "that

---

[2] "As this Court is aware, there are myriad legal issues pertaining to every court order: procedural requirements, jurisdictional requirements, substantive legal issues. Having administrative staff attempt to verify those requirements post-hoc would . . . risk violating the separation of powers, as executive officers would be required to second-guess judicial officers outside of the judicial process. In essence, it would create an end-run around the appellate process."

Plaintiff's complaint, ECF No. 1, is [dismissed] with leave to amend **only as directed**" and "that Plaintiff may file an amended complaint **only as directed**." *Id.* at 15 (emphasis added). This Court's first direction to Plaintiff was that "he must utilize the Court's § 1983 complaint form," which the Clerk then mailed to him. *Id.* at 11, 16; *see also* ECF No. 12-1.[3]

Plaintiff did not obey that order. *Compare* ECF No. 13 (Plaintiff's amended complaint), *with* Exhibit 1 (a copy of the complaint form that the Clerk sent to Plaintiff); *see* Exhibit 2 (confirmation that Exhibit 1 is a copy of the form sent to Plaintiff).

Moreover, Plaintiff failed to "bear in mind the legal principles set forth in [this Court's] order in preparing his amended complaint." ECF No. 12 at 12. Among other issues, Plaintiff did not allege facts that, if proven, would establish (i) that this Court has subject-matter jurisdiction notwithstanding its conclusion that that the *Rooker-Feldman* doctrine and *Younger* abstention applied or (ii) "more than mere alleged non-compliance with [state procedural rules, which] is required to state a violation of his due process rights." *Id.* at 13.

Plaintiff's willful disregard of this Court's clear directive warrants dismissal of this case under Rule 41(b). Plaintiff had thirty days to draft a compliant amended complaint and was given both a form and instructions. Instead, he submitted a noncompliant amended complaint less than two weeks later. Given the Court's ongoing lack of subject-matter jurisdiction and the frivolousness of Plaintiff's claims, continuing this case despite Plaintiff's disregard of this Court's Order prejudices Defendant and wastes judicial resources. As his amended complaint makes clear, Plaintiff is simply attempting to relitigate his matrimonial action in federal court, challenging every state-court order that he dislikes as a violation of his rights, despite his having notice and being

---

[3] There is also an unnumbered docket entry, entered on October 30, 2025, confirming that the Clerk mailed a copy of the "blank Section 1983 form and instructions for preparing an amended complaint to plaintiff."

represented by counsel in that ongoing state-court action. Plaintiff has had more than a fair chance

to be heard. He is now being heard in two courts. And it appears that he is likely violating court

instructions in both courts. Continuing this action threatens allowing Plaintiff to continue asserting

frivolous claims and filing untenable motions for injunctive relief. *See* ECF No. 14. Given that

Plaintiff has an adequate and more appropriate forum to address his grievances, he should not be

allowed to continue wasting this Court's time and resources. And he should not be allowed to do

so after disobeying this Court's Order.

## III.    Leave to Amend

This Court previously found it "unlikely that Plaintiff can allege additional facts to state a

valid claim," but it nonetheless granted him an opportunity to amend given his *pro se* status. ECF

No. 12 at 11. Plaintiff has now fulfilled the Court's prediction. His amended complaint, which

violates the Court's Order, does not establish that this Court has subject-matter jurisdiction over

his purported claims. Indeed, as discussed above, his amended complaint further establishes that

this Court lacks jurisdiction. Because granting further leave to amend "is unlikely to be

productive," the Court need not grant such leave. *Ruffolo*, 987 F.2d at 131. Defendant therefore

respectfully requests that this Court dismiss Plaintiff's amended complaint without leave to amend.

If this Court does grant Plaintiff another opportunity to amend, Defendant respectfully

requests that it prohibit Plaintiff from using generative artificial intelligence (e.g., ChatGPT) when

preparing his complaint or other materials. Repeated citation and quotation errors,[4] along with

conversations with counsel in the underlying matrimonial action, lead counsel for Defendant to

---

[4] *Compare* ECF No. 14 at 8 ("adequate opportunity to raise federal claims"), *with Jacobs*, 571 U.S. at 75 ("adequate opportunity to raise [federal] challenges" (brackets in original)); *see also* ECF No. 6-2 at 3–4 (noting that "[t]he phrase 'constitutionally infirm,'" is not used in a case despite Plaintiff's purported quotation).

reasonably believe that Plaintiff is using generative artificial intelligence to draft his pleadings and motion papers. Although that is not, by itself, a problem, it is becoming increasingly apparent that Plaintiff is not checking the legal citations or arguments put forth by the generative artificial intelligence. If Plaintiff is not using such technology, then he nonetheless needs reminding to verify the legal authorities and factual allegations that he submits to this Court.

CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss Plaintiff's claims, without leave to amend, under Rules 12(b)(1) and 41(b).

Dated:  November 20, 2025                    RESPECTFULLY SUBMITTED,

Matthew Schwartz
Monroe County Attorney

*Zachary Nelson*
Zachary T. Nelson
Deputy County Attorney
307 County Office Building
39 West Main Street, Rochester, NY 14614
Telephone:  585.753.1413
E-Mail:  zacharynelson@monroecounty.gov

16