

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSEPH M. FUSCO III,

    *Plaintiff,*

v.

MONROE COUNTY, NEW YORK,

    *Defendant.*

25-CV-6505-MAV

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

PRELIMINARY STATEMENT

Defendant moves to dismiss Plaintiff's Amended Complaint under Rules 12(b)(1) and 41(b), without leave to amend. The motion should be denied.

Defendant advances three arguments: (1) *Rooker-Feldman* bars the action; (2) *Younger* abstention applies because the matrimonial case is "ongoing"; and (3) Plaintiff violated the Court's October 30 Order by not using the § 1983 complaint form. None succeeds.

*On the form issue:* The Court's standard non-prisoner § 1983 form cannot accommodate complex constitutional claims requiring demonstration of the four *Christopher v. Harbury*, 536 U.S. 403 (2002), elements and *Monell* municipal liability factors. If the Court determines that strict form compliance was required, Plaintiff respectfully requests leave to refile using the form with incorporated attachments—the standard practice when complaints exceed form capacity.

1

*On Rooker-Feldman:* The Amended Complaint no longer seeks to have any order declared "*void ab initio*." Plaintiff challenges Monroe County's ministerial enforcement of a filing restriction imposed without the procedural safeguards the Second Circuit requires under *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). That enforcement is independently actionable regardless of whether the underlying orders were correctly decided.

*On Younger:* Defendant argues the matrimonial action is "ongoing" because a custody trial is scheduled for January 2026. But a proceeding from which Plaintiff is judicially barred from participating is not "ongoing" as to him for *Younger* purposes. The October 14, 2025 filing restriction prohibits Plaintiff from filing "any... paperwork with the New York State court system regarding this matter without [the court's] permission." Am. Compl. ¶64. Telling a litigant he can walk through a door, then locking the door, does not provide access. When a litigant cannot file papers, cannot participate in proceedings, and cannot pursue appellate remedies, no adequate state forum exists warranting abstention.

The motion should be denied.

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material factual allegations in the complaint" but must refrain from "drawing from the pleadings inferences favorable to the party asserting jurisdiction." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party invoking federal

2

jurisdiction bears the burden of establishing it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

On a motion to dismiss under Rule 12(b)(6), the Court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). Dismissal is appropriate only where the complaint fails to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

*Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" and must be construed to "raise the strongest arguments that they suggest." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

### ARGUMENT

### I. THE AMENDED COMPLAINT COMPLIES WITH THE COURT'S ORDER

Defendant argues that Plaintiff's Amended Complaint warrants dismissal under Rule 41(b) because Plaintiff did not use the Court's § 1983 complaint form. Def. Mem. at 13-14. This argument fails for three reasons.

First, the form cannot accommodate this type of claim. The Court's standard non-prisoner § 1983 form (Exhibit 1 to Nelson Aff.) is a five-page fill-in-the-blank document designed for straightforward complaints alleging discrete incidents. It asks: "On (date of the incident) defendant... did the following to me." This format

cannot accommodate claims requiring: (1) demonstration of a systematic municipal custom affecting multiple proceedings; (2) the four-element *Christopher v. Harbury* access-to-courts framework; (3) threshold constitutional violation analysis; and (4) *Monell* moving-force causation. Courts routinely permit plaintiffs to supplement standard forms with attachments when claims exceed form capacity. See, e.g., WDNY Non-Prisoner Complaint Form Instructions ("Add a separate sheet, if necessary").

Second, Plaintiff's Amended Complaint addresses every substantive requirement the Court identified. The October 30 Decision directed Plaintiff to: (a) "provide a short and plain statement of the relevant facts supporting each claim against each Defendant," (b) "tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why he is entitled to relief," and (c) "bear in mind the legal principles set forth in this Order." ECF No. 12 at 11-12. The Amended Complaint satisfies each requirement. It identifies Monroe County as the sole defendant, specifies the dates of each challenged order (January 10, October 14, October 30, 2025), explains how County employees' ministerial acceptance of orders without verification violates constitutional rights, and addresses this Court's *Monell* guidance regarding threshold constitutional violations and moving-force causation.

Third, dismissal under Rule 41(b) requires consideration of lesser sanctions. *Park v. Kim*, 91 F.4th 610, 612-13 (2d Cir. 2024). The five Rule 41(b) factors do not support termination: (1) Plaintiff filed promptly, within two weeks of the Order; (2) Plaintiff received no warning that non-compliance with form requirements would result in

4

dismissal; (3) Defendant identifies no prejudice from the complaint's format; (4) Plaintiff deserves a fair chance to be heard on the merits; and (5) lesser sanctions—specifically, direction to refile using the form with attachments—would adequately address any deficiency. *Id.* If the Court determines that strict form compliance was required, the appropriate remedy is leave to refile, not dismissal with prejudice. The County seeks permanent dismissal—not because the claim lacks merit, but because the complaint lacks a checkbox.

## II. PLAINTIFF'S CLAIM RESTS ON FEDERAL CONSTITUTIONAL REQUIREMENTS

Defendant's motion does not substantively address Plaintiff's core claim: that Monroe County ministerially enforces a filing restriction imposed without the procedural safeguards the Constitution requires. This Court's October 30 Decision noted that "more than mere alleged non-compliance with [a state procedural rule] is required to state a violation of... due process rights." ECF No. 12 at 13. Plaintiff agrees. The claim here rests on federal constitutional requirements, not state procedural rules.

The Second Circuit has held that the right of access to courts is constitutionally protected and that restrictions on that access require specific procedural safeguards. *Safir v. U.S. Lines, Inc.,* 792 F.2d 19, 24 (2d Cir. 1986); In *re Martin-Trigona,* 737 F.2d 1254, 1261 (2d Cir. 1984) ("A court's power to protect itself from vexatious litigation must be exercised in a manner that is in harmony with the requirements of due process."). Before restricting a litigant's access to courts, due

5

process requires consideration of five factors: (1) the litigant's history of vexatious, harassing, or duplicative litigation; (2) the litigant's good faith; (3) the burden on courts and parties; (4) adequacy of lesser sanctions; and (5) preservation of a pathway for meritorious claims. *Safir*, 792 F.2d at 24. These are federal constitutional requirements derived from the First Amendment right to petition and the Fourteenth Amendment guarantee of due process.

The October 14, 2025 filing restriction satisfies none of the *Safir* factors. No motion sought it. No party requested it. No findings supported it. No alternatives were considered. No pathway for meritorious claims was preserved. The transcript establishes these facts beyond dispute:

> "Just so we're sure so the record is clear so if he appeals this—he certainly can, I recommend that he appeals this, is that there was no request for an order of protection by anybody in this courtroom today that I'm aware of. There may have been previously... I have ordered it. Okay? So nobody here besides me." Am. Compl. 42.

These are not technical deficiencies. They are fundamental constitutional failures. No motion. No hearing. No findings. No process.

Monroe County's ministerial enforcement of this facially deficient restriction directly causes Plaintiff's constitutional injury. County employees—not state court judges—make the ministerial decision to accept or reject filings based on the restriction. When Plaintiff attempts to file documents, County clerks process or reject those filings based on compliance with the October 14 order. This enforcement decision constitutes County policy in action, not mere compliance with a judicial

6

directive. The County could verify *Safir* compliance before enforcement; it chooses not to. But for the County's enforcement, Plaintiff could file papers challenging the restriction itself. The County's practice is the moving force behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

### III. *ROOKER-FELDMAN* DOES NOT BAR THIS ACTION

Defendant argues that *Rooker-Feldman* bars this action because Plaintiff "asks this Court to order everything up to the line of declaring the orders in his matrimonial case void, without expressly doing so." Def. Mem. at 7. This mischaracterizes the Amended Complaint.

#### A. The Relief Requested Requires No Review of State Court Judgments

The Amended Complaint requests: (1) a declaration that Monroe County's practice of accepting orders without verifying motions violates due process; (2) an injunction requiring verification procedures; and (3) nominal damages. Am. Compl. ¶¶ 27-30. None of this relief requires this Court to determine whether any state court order was correctly decided.

Defendant points to audit and notice provisions in Plaintiff's preliminary injunction motion. Def. Mem. at 7. But those provisions—which would notify affected parties that certain orders "may be voidable"—do not require this Court to declare any order void. They would provide notice of potential procedural defects, leaving affected parties and state courts to determine appropriate remedies. This differs not

7

at all from a court finding that municipal practices violate due process and ordering corrective measures.

The Supreme Court made clear that *Rooker-Feldman* is "confined to cases... brought by state-court losers complaining of injuries caused by state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It "does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Id.* Plaintiff's injury here stems not from the state court judgments themselves but from Monroe County's ministerial enforcement of a filing restriction imposed without constitutional safeguards. Plaintiff does not ask this Court to review what the state court decided. He asks this Court to address what the County does.

### B. The *Safir* Claim Is Independent of Any State Court Judgment

Plaintiff challenges Monroe County's enforcement of a filing restriction that fails *Safir's* requirements. This Court need not determine whether Judge Gallagher correctly imposed a restriction. It need only determine whether the County may enforce a restriction that facially fails constitutional requirements. That question is independent of the state court's merits determination.

This Court's October 30 Decision cited *Wang v. Delphin-Rittmon*, 664 F. Supp. 3d 205, 214-15 (D. Conn. 2023), distinguishing it because the plaintiff there challenged "measures not mentioned or expressly authorized by" the state court order. ECF No.

12 at 8. The same distinction applies here. Plaintiff challenges Monroe County's enforcement of the filing restriction—a ministerial act occurring after the judicial decision, involving no exercise of judicial discretion.

### IV. *YOUNGER* ABSTENTION DOES NOT APPLY

Defendant argues that *Younger* abstention applies because Plaintiff's matrimonial action "remains ongoing" with a custody trial scheduled for January 2026. Def. Mem. at 10. This argument conflates the existence of a proceeding on a docket with availability of that proceeding to the federal plaintiff.

#### A. A Proceeding From Which Plaintiff Is Barred Is Not "Ongoing" As To Him

*Younger* abstention presupposes that state proceedings provide adequate opportunity to raise federal claims. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Courts do not require litigants to pursue remedies that are unavailable in fact. See *Ross v. Blake*, 578 U.S. 632, 642 (2016) (administrative remedies are unavailable when they are "incapable of use" or when "some mechanism... operates as a simple dead end"). The rationale for *Younger* abstention—avoiding federal interference with state proceedings that can adequately protect federal rights—disappears when the federal plaintiff cannot access those proceedings.

Defendant's affirmation confirms that the matrimonial case "remains ongoing" on the docket. Nelson Aff. ¶5. But a case remaining on the docket does not mean

Plaintiff can participate in it. The October 14 filing restriction prohibits Plaintiff from filing "any... paperwork with the New York State court system regarding this matter without [the court's] permission." Am. Compl. ¶64. This is not a theoretical barrier—it is an absolute prohibition enforced by Monroe County clerks who reject non-compliant filings.

The County's own motion proves the disparity at the heart of this case. To establish that state proceedings are "ongoing," the County's counsel spoke with opposing counsel in the matrimonial action and with Judge Gallagher's law clerk. Nelson Aff. ¶5. The County does not dispute that Plaintiff cannot file papers in that proceeding. The County does not explain how Plaintiff can participate in the January 2026 custody trial. The County does not address how Plaintiff can appeal when he cannot file an appeal, or how he can request permission to file when he cannot file a request for permission. The County simply verified that a case exists on a docket—which is precisely Plaintiff's point. Meanwhile, on October 21, 2025, while Plaintiff was prohibited from filing any papers, the County filed a procedurally perfect motion in the same proceeding. NYSCEF Docs. #272-283. The County accessed the very forum from which Plaintiff is barred. The County knows what proper procedure requires and demonstrated the capacity to comply. The County simply believes those requirements should apply to itself but not to the restrictions it enforces against Plaintiff.

The County accuses Plaintiff of "lying" about exhaustion. Def. Mem. at 10. This accusation rests entirely on the state court telling Plaintiff he "could" appeal. But

telling someone they can walk through a door, then locking the door, does not provide access. The County does not dispute that the filing restriction exists. The County does not dispute that it prevents appeals without permission. The County does not explain how Plaintiff can obtain permission when he cannot file a motion requesting it. The County simply asserts that theoretical availability equals actual availability—and calls Plaintiff a "liar" for recognizing the difference. *Cf. Ross*, 578 U.S. at 643 (remedy unavailable when officials "thwart inmates from taking advantage of" it).

You cannot exhaust a remedy you cannot reach.

This is not a case where the federal plaintiff chose not to pursue available state remedies. Plaintiff has pursued every remedy he can access: trial court motions (blocked by filing restriction), Article 78 proceeding (dismissed with direction to pursue appeal, which the restriction blocks), and CPLR § 5704(a) applications (denied November 10, 2025). Am. Compl. ¶¶ 64-79. *Younger* does not require a litigant to pursue remedies he cannot actually access.

### B. *Sprint* Communications Confirms *Younger's* Narrow Scope

In *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that *Younger* abstention applies only to three "exceptional" categories of state proceedings: (1) "state criminal prosecutions"; (2) "civil enforcement proceedings" that are "akin to criminal prosecutions"; and (3) "civil proceedings involving certain orders... uniquely in furtherance of the state courts' ability to perform their judicial

functions." *Id.* at 72-73, 78. Absent these "exceptional circumstances," federal courts have a "virtually unflagging obligation... to exercise the jurisdiction given them." *Id.* at 77 (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

A challenge to Monroe County's ministerial enforcement practices fits none of *Sprint's* three categories. This is not a criminal prosecution. It is not a civil enforcement proceeding akin to a criminal prosecution. And while the underlying matrimonial action involves custody—a matter implicating state interests—Plaintiff does not challenge any custody determination. He challenges the County's enforcement of a filing restriction that prevents him from participating in those proceedings at all. Even if custody proceedings fall within *Sprint's* third category, that category protects judicial functions—the authority of state courts to decide cases. It does not immunize ministerial conduct by county employees who process or reject filings. Enjoining the County's enforcement does not direct the state court to do anything. It addresses administrative conduct of County employees who accept filings, not judicial conduct of state court judges who decide cases.

C. The Requested Relief Does Not Interfere With State Judicial Functions

Defendant argues that Plaintiff's requested relief would constitute an "astonishing degree of policymaking intervention into the administration of state courts." Def. Mem. at 7-8. This overstates the relief sought.

The Amended Complaint requests verification procedures for County clerks—ministerial personnel who perform administrative functions. Clerks already perform similar ministerial functions: checking that filing fees are paid, that documents are properly formatted, that required signatures are present. Confirming that a motion exists before docketing an order, or verifying that a filing restriction satisfies *Safir* before enforcement, is no different. Checking whether a motion exists requires a database query, not a law degree.

Defendant suggests that requiring verification procedures would "create an end-run around the appellate process" because it would allow administrative staff to "second-guess judicial officers." Def. Mem. at 13 n.2. This misunderstands the claim. Verification procedures confirm that procedural prerequisites exist—a ministerial check, not a substantive review of judicial decisions. No one argues that clerks "second-guess" judges when they confirm filing fees are paid before accepting a complaint.

### D. The County's Request Regarding Document Preparation

The County, represented by the Monroe County Law Department with full access to legal research databases and support staff, asks this Court to police how a *pro se* litigant prepares documents—based on a single word variance in a quotation. Def. Mem. at 15-16. Plaintiff's preliminary injunction motion quoted *Sprint* as referring to "adequate opportunity to raise federal claims" rather than "adequate opportunity to raise [federal] challenges." *Id.* at 15 n.4. This variance does not affect the legal

argument. It does not misrepresent any holding. It reflects the kind of minor transcription error that appears in briefs filed by attorneys and *pro se* litigants alike.

That the County devoted a paragraph of its motion to this issue, while offering no substantive response to the *Safir* claim, speaks to the weakness of its position on the merits. The County's 16-page memorandum does not cite *Safir*. It does not address the five-factor test for filing restrictions. It does not explain how a restriction imposed without findings, without hearing, without consideration of alternatives, and without a pathway for meritorious claims satisfies due process. Instead, the County attacks Plaintiff's document preparation methods. This Court should decline the invitation to supervise how a *pro se* litigant drafts his briefs and should instead address the constitutional questions the County's motion ignores.

## CONCLUSION

The County asks this Court to dismiss a complaint challenging County conduct because state proceedings exist—proceedings that the County's own enforcement makes unavailable to Plaintiff. This is circular.

The Amended Complaint states a claim under *Safir*: Monroe County ministerially enforces a filing restriction imposed without constitutional safeguards—no findings, no hearing, no alternatives, no pathway for meritorious claims. That enforcement is independently actionable under § 1983. *Rooker-Feldman* does not bar the action because Plaintiff seeks no review of state court judgments. *Younger* abstention does

not apply because Plaintiff cannot participate in the "ongoing" state proceeding from which he is judicially barred, and *Sprint* confirms that challenges to ministerial enforcement practices fall outside *Younger's* narrow categories.

The County verified that state proceedings are "ongoing" by speaking with opposing counsel and the judge's law clerk—while Plaintiff is prohibited from speaking with either. The County filed a procedurally perfect motion in the same proceeding from which Plaintiff is barred. The County knows what access looks like because it has access. Plaintiff does not.

If the Court determines strict compliance with the § 1983 form was required, Plaintiff respectfully requests leave to refile using the form with incorporated attachments, rather than dismissal with prejudice.

The motion to dismiss should be denied.

Respectfully submitted,

Dated: November 26, 2025

    Rochester, New York

_____
Joseph M. Fusco III, *Pro Se*
211 West Bloomfield Road
Pittsford, New York 14534
Telephone: (585) 317-1707
Email: hello@josephfus.co

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSEPH M. FUSCO III,

   *Plaintiff,*

 v.

MONROE COUNTY, NEW YORK,

   *Defendant.*

25-CV-6505-MAV

CERTIFICATE OF SERVICE

---

I hereby certify that on November 26, 2025, I filed the following documents with the Clerk of the United States District Court for the Western District of New York via the Court's CM/ECF system:

1. Memorandum of Law in Opposition to Motion to Dismiss

The CM/ECF system will provide electronic notification and service upon counsel for Defendant:

 Zachary Tyler Nelson, Esq.
 Monroe County Department of Law
 39 West Main Street, Room 307
 Rochester, NY 14614

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 26, 2025.

 Rochester, New York

              _____
              Joseph M. Fusco III, Pro Se
              211 West Bloomfield Road
              Pittsford, New York 14534
              Telephone: (585) 317-1707
              Email: hello@josephfus.co