UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joseph M. Fusco III, | |
| *Plaintiff,* | Case No. 25-cv-06505 |
| v. | **Defendant's Memorandum of Law in Opposition to Plaintiff's Second Motion for a Preliminary Injunction** |
| Monroe County et al., | |
| *Defendants.* | |

**PRELIMINARY STATEMENT**

After this Court denied his motion for a temporary restraining order and his motion for a preliminary injunction as moot, ECF No. 12 at 2, Plaintiff Joseph M. Fusco III has again moved for a preliminary injunction, ECF No. 14. At bottom, he asks this Court to create substantial and novel policies governing the administration of state courts in a creative effort to undo state-court orders in his pending matrimonial action. *See* ECF No. 14 at 30–33 (asking this Court to require Monroe County to "audit" orders issued in the last two years and issue notice to parties and judges concerning the orders' likely unconstitutionality).[1] Defendant Monroe County respectfully requests that this Court decline Plaintiff's invitation.

Before addressing Plaintiff's arguments, Defendant wants to update the Court on the issue of access to the matrimonial records underlying Plaintiff's claim. The state court held a hearing on Defendant's motion to unseal on November 21, 2025. Exhibit 1. The court stated a willingness to grant the motion, but is delaying its decision until this Court resolves Defendant's pending motion to dismiss, ECF No. 15. *Id.* at 3. If this case continues, the state court will conduct an *in-camera* review of the matrimonial records and grant Defendant's counsel access to relevant documents. *Id.* at 4.

---

[1] Citations to filed documents are to the page numbers generated by CM/ECF.

# ARGUMENT

Plaintiff is not entitled to a preliminary injunction because (a) this Court lacks subject-matter jurisdiction and (b) Plaintiff has not satisfied any of the requirements for securing injunctive relief.

**A.    This Court lacks subject-matter jurisdiction**

This Court recently concluded that it lacks subject-matter jurisdiction over this action due to the *Rooker-Feldman* doctrine and *Younger* abstention. ECF No. 12. Nonetheless, it granted Plaintiff leave to amend due to his *pro se* status. *Id.* at 11. As discussed in Defendant's pending motion to dismiss, Plaintiff's amended complaint has not remedied the jurisdictional deficiency identified by this Court. ECF No. 15 at 6–13. *Rooker-Feldman* and *Younger* remain applicable. Without jurisdiction, this Court is unable to issue Plaintiff's requested injunction. Thus, as with Plaintiff's earlier requests, Plaintiff's motion for a preliminary injunction warrants denial as moot for lack of subject-matter jurisdiction. ECF No. 12 at 2.

**B.    Even if this Court had subject-matter jurisdiction, Plaintiff would not be entitled to a preliminary injunction**

A person seeking a preliminary injunction must show "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring [him]; and (3) that a preliminary injunction is in the public interest." *Hardaway v Nigrelli*, 636 F. Supp. 3d 329, 336 (W.D.N.Y. 2022) (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)). Because Plaintiff's requested injunctive relief "would alter, rather than maintain, the status quo," he "must show a clear or substantial likelihood of success on the merits at step two." *Id.* (quotation marks and citations omitted). Plaintiff has not satisfied any of those requirements.

For clarity and convenience, Defendant addresses the foregoing elements in the order presented in Plaintiff's motion.[2]

**1. Plaintiff has not shown a clear or substantial likelihood of success on the merits**

Plaintiff argues that the County's "practice of accepting court orders without verifying that underlying motions exist violates the First Amendment's Petition Clause and the Fourteenth Amendment's Due Process Clause by denying [him] meaningful access to courts." ECF No. 14 at 2. He has not shown a clear or substantial likelihood of success on the merits of those claims, because they have no merit.

**a. Plaintiff's First Amendment claim has no merit**

Plaintiff roots his First Amendment access-to-courts claim in *Christopher v. Harbury*, 536 U.S. 403 (2002). ECF No. 14 at 5–6. Building from *Christopher*, the Second Circuit has recognized that, "to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused 'actual injury,' *i.e.*, took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." *Jordan v. Chiaroo*, No. 24-2397, 2025 WL 1720227, at *1 (2d Cir. June 20, 2025) (summary order) (cleaned up). The question is "whether [the plaintiff] has lost an opportunity to pursue a nonfrivolous legal claim." *Moreau v. Ellsworth*, No. 21-2997, 2023 WL 3477153, at *1 (2d Cir. May 16, 2023) (summary order) (citing *Lewis v. Casey*, 518 U.S. 343, 349 (1996), and *Christopher*, 536 U.S. at 414–15). Restated, the question is whether "government officials obstruct[ed] legitimate efforts to seek judicial redress." *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017) (quotation marks and citations omitted).

---

[2] Defendant does not address Plaintiff's arguments concerning the "balance of equities," because such is not a part of this Court's analysis. *See Hardaway*, 636 F. Supp. 3d at 336 (discussing the requirements for securing a preliminary injunction) (quoting *N. Am. Soccer League*, 883 F.3d at 37).

Plaintiff argues that Defendant's acceptance of allegedly invalid state-court orders in his pending state-court action "eliminat[ed] the procedural infrastructure for judicial review." ECF No. 14 at 6. That is nonsense. Plaintiff has multiple avenues for appellate review of orders issued in his matrimonial case. Under Section 5701(a)(3) of the New York Civil Practice Law and Rules, for example, Plaintiff could move to vacate or modify the state court's prior order and, if the court denied the motion, Plaintiff could appeal as of right. That section specifically covers the situation that Plaintiff presents: the order denying vacatur or modification is appealable "if the prior order would have been appealable as of right . . . had it decided a motion made upon notice." CPLR § 5701(a)(3). Plaintiff could also seek an appeal by permission under CPLR § 5701(c). *See* ECF No. 13 at 9–10 (Plaintiff quoting the state-court judge saying that Plaintiff "certainly can" appeal the interlocutory order and that the judge "recommend[s] that he appeals" the order).

Plaintiff's argument also misses the mark. For purposes of an access-to-courts claim, the question is "whether [the plaintiff] has lost an opportunity to pursue a nonfrivolous legal claim." *Moreau*, 2023 WL 3477153, at *1 (citing *Lewis*, 518 U.S. at 349, and *Christopher*, 536 U.S. at 414–15). The fact that Plaintiff is contesting interlocutory orders in a pending case establishes that he did not lose an opportunity to pursue a legal claim. Even if he could not appeal the state-court orders, his claim would fail because he is not alleging that he lost the ability to pursue a legal claim; he is arguing that he lost appellate review.

Plaintiff's other arguments under *Christopher* also fail. He argues that he has a nonfrivolous underlying claim, presumably sounding in due process, because "[o]rders issued without required motions are void under New York law." ECF No. 14 at 5. This Court already warned Plaintiff that "more than mere alleged non-compliance with [a state-court rule of civil procedure] is required to state a violation of his due process rights." ECF No. 12 at 13. And this

Court pointed out that Plaintiff's due process claim is undercut by the fact that Plaintiff's counsel participated in the hearings underlying the orders that he claims are procedurally deficient. *Id.* at 14. An access-to-courts claim "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415. Not only was Plaintiff not shut out of court, but he has no underlying claim.

Plaintiff claims that he has no alternative remedy, because he "exhausted all forums over 311 days." ECF No. 14 at 6. But he has not alleged that he sought appeal as of right under CPLR § 5701(a)(3) or appeal by permission under CPLR § 5701(c). Nor has he alleged that he moved for modification or vacatur of the various orders that he challenges in this case. He alleges that Justice Gallagher "imposed filing restrictions prohibiting Plaintiff from filing any papers without prior judicial permission." ECF No. 13 at 28–29. But Plaintiff has counsel. *Id.* at 8; Exhibit 1. Plaintiff does not explain why his counsel cannot seek modification, vacatur, or appellate review of the various interlocutory orders. Moreover, Plaintiff alleges that he requested a conference in his matrimonial action and that the state court granted that conference. ECF No. 13 at 9. Plaintiff has not been shut out of his matrimonial action.

Finally, Plaintiff's argument concerning his purported injuries—injuries apparently flowing from the enforcement of the various state-court orders in his matrimonial action—is a nonstarter. As discussed above, under *Christopher* and its progeny, a plaintiff asserting an access-to-court claim must show that they "suffered [an] injury *by being shut out of court.*" *Christopher*, 536 U.S. at 415 (emphasis added). Plaintiff was not and is not shut out of court. Indeed, he is now being heard in at least three fora: this Court, the bankruptcy court, and the state court. *See* ECF No. 14 at 16 ("[t]he bankruptcy court declined jurisdiction over the state court orders"); Exhibit 1 (recent state-court hearing).

5

### b. Plaintiff's Fourteenth Amendment claim has no merit

Plaintiff next argues that Defendant is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Although unclear, it appears that Plaintiff means that Defendant is liable under *Monell* for violating his rights under the Fourteenth Amendment Due Process Clause. *See* ECF No. 14 at 2 (listing his two claims), 5 (discussing his access-to-courts claim under one heading), 6 (discussing *Monell* under a different heading). As with his prior motion for injunctive relief, it appears that Plaintiff is asserting a claim for procedural due process.

Plaintiff appears to have disregarded this Court's guidance concerning his due process claim. This Court told Plaintiff that he would need to allege "more than mere alleged non-compliance" with state-court procedural rules to plead a due process claim. ECF No. 12 at 13. This Court further told Plaintiff that "there can be no *Monell* liability where Plaintiff cannot establish that an underlying individual violated his constitutional rights," and that Plaintiff's counsel's presence and participation in the hearings underlying the state-court orders at issue undercut his claim of a constitutional injury. *Id.* at 14. In response, Plaintiff asserts the same argument, with additional arguments based on defense counsel's October 21, 2025, filing in the state-court action. ECF No. 14 at 6–7. Despite clear instructions, Plaintiff has not remedied the fatal defect in his due process claim: he has no alleged no cognizable legal injury.

It is also worth recognizing that, as with Plaintiff's earlier motion for injunctive relief, Plaintiff has not applied the legal framework applicable to procedural due-process claims. *See* ECF No. 6-2 at 19–20 (discussing this issue). Procedural due process claims are governed by the framework set forth in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). Plaintiff neither mentions nor applies that framework. Given that it is his burden to establish an entitlement to a preliminary injunction, his lack of argument and supportive authority is fatal.

### 2. Plaintiff has not shown irreparable harm

"Irreparable harm is 'certain and imminent harm for which a monetary award does not adequately compensate.'" *Hardaway*, 636 F. Supp. 3d. at 349 (quoting *Wisdom Imp. Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113 (2d Cir. 2003)). "[It] exists 'where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.'" *Id.* (quoting *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999)).

Plaintiff alleges three types of irreparable harm: (i) loss of property and business profits, (ii) denial of constitutional rights, and (iii) loss of parental rights. ECF No. 14 at 8–9. None of those are irreparable injuries.

First, lost property and profits are compensable with damages; indeed, injunctive relief cannot compensate for lost business.

Second, the denial of Plaintiff's constitutional rights is nonexistent. As discussed above, Plaintiff has not been shut out of any court; his matrimonial action is pending, and the judge has encouraged Plaintiff on the record to pursue appellate review. Nor has Plaintiff suffered a violation of his due process rights. He has been represented by counsel in the matrimonial action, and his counsel has participated in the hearings underlying the orders that Plaintiff dislikes. And Plaintiff's only cited authority, *Elrod v. Burns*, 427 U.S. 347 (1976), does not alter those conclusions: *Elrod* dealt with "the impact of patronage on political belie[f] and association[, which] constitute the core of those activities protected by the First Amendment." 427 U.S. at 356; *see Christopher*, 536 U.S. at 415 (calling "the constitutional right of access to courts . . . *ancillary to [an] underlying claim*" (emphasis added)).

Finally, Plaintiff's purported loss of parental rights is a nonstarter. To secure a preliminary injunction, Plaintiff must establish "that he is likely to suffer irreparable harm *in the absence of preliminary relief*." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (emphasis added). Plaintiff argues that his proposed injunction "would not disrupt valid orders," "[i]nvalidate any existing order," or "[d]eclare any existing order void, voidable, or invalid." ECF No. 14 at 13, 30, 33. If true, then his requested injunction would not remedy his alleged injury. The order of protection, requiring Plaintiff to have no contact with his minor child,³ would remain in effect notwithstanding the injunctive relief. For the injunction to remedy Plaintiff's purported loss of parental rights, it would need to modify or vacate the state-court order of protection; such a request, mirroring the demands from Plaintiff's prior motion for a preliminary injunction, would run into the jurisdictional barriers erected by *Rooker-Feldman* and *Younger*. *See, e.g.*, *Smith v. D'Agostino*, No. 25-CV-1265-MA V, 2025 WL 2695439, at *4 (N.D.N.Y. Sept. 22, 2025) ("Plaintiffs' specific requests to enjoin and modify" state-court orders of protection and child custody "clearly implicate the *Rooker-Feldman* doctrine").

### 3. Plaintiff has not shown that the requested injunction is in the public interest

Plaintiff argues that the public interest supports his requested injunction for several reasons: (i) the public interest "is served by ensuring that all Monroe County residents have meaningful access to courts through compliance with basic procedural requirements," (ii) preventing constitutional violations is in the public interest, (iii) his requested "verification" procedure improves judicial economy, and (iv) the injunctive relief is narrowly tailored. ECF No. 14 at 2, 10. None of those arguments justify Plaintiff's requested injunction.

Although the principles that Plaintiff espouses may serve the public interest, they do not

---

³ *See* ECF No. 14 at 15 (the state court "issued an Order of Protection directing complete stay-away and no-contact between [Plaintiff] and [his] twelve-year-old daughter").

do so in this case. As discussed above, Plaintiff has not shown a likelihood of success on the merits of his constitutional claims. He has not shown that his right to access any court has been violated. The public interest may support ensuring public access to the courts, but Plaintiff has not shown that his proposed injunction is needed by the public or would meaningfully improve public access to courts. Nor has he shown that his proposed injunction would help prevent constitutional violations.

Plaintiff's terse statement that his "[s]imple verification" procedures would improve judicial economy is a nonstarter. *Id.* at 10. As discussed in Defendants' response to Plaintiff's earlier motion for injunctive relief, there are myriad legal issues pertaining to every court order, including matters of jurisdiction, procedural requirements, and substantive law. ECF No. 6-2 at 21. Having nonlawyer County staff undertake post-hoc review of court orders would create an insurmountable administrative burden. Even if, as Plaintiff argues, verifying the procedural issue central to his case would take "approximately 60 seconds," per order, ECF No. 14 at 21, there are many orders in many cases. Verifying each order would drastically increase the administrative burden. And it would yield no benefit to the public; litigants would still have to pursue modification, vacatur, or appeal of purportedly deficient orders. *See id.* at 13, 30, 33 (Plaintiff's proposed injunction "would not disrupt valid orders," "[i]nvalidate any existing order," or "[d]eclare any existing order void, voidable, or invalid.").

Plaintiff's final argument, that the requested injunction is "narrowly tailored" and thus supported by the public interest, is untenable. Plaintiff's proposed injunction would impose substantial new policies and procedures governing the administration of state courts. Parties submitting orders for entry would need to include a new certification. *Id.* at 28–29. County staff would have to check electronic and physical files for all orders affecting real property, parent-child

relationships, or personal liberty. *Id.* at 28. The County would need to post notice of the new requirements, designate a coordinator, train staff, create and distribute a "verification checklist," track "compliance rates," and "develop assistance materials" for implementation. *Id.* at 29. It would also need to "[a]udit orders issued in the last 24 months" to identify purportedly procedurally deficient orders, and, within 90 days of the injunction's issuance, "provide written notice to all parties in cases where orders lack verified underlying motions." *Id.* at 30–31. The County would also need to provide written notice to the issuing judges in those cases and "[e]stablish expedited procedures for parties seeking to verify motion status." *Id.* at 31–32. It would further be required to file quarterly compliance reports with this Court, along with a "statistical report" within 120 days of the injunction's issuance. *Id*. at 30, 32. The injunction would last until the County achieved "95% compliance for 12 consecutive months." *Id.* at 30. Far from being narrowly tailored, Plaintiff's requested injunction asks this Court to manage the administration of the state courts.

The public interest firmly opposes granting Plaintiff's requested injunction. For one, the public interest in maintaining the rule of law and our federal system of government pushes against federal courts intervening in state-court actions, especially divorce cases, which have traditionally fallen within state jurisdiction. Of course, federal intervention can be necessary in certain circumstances to ensure state respect for fundamental liberties. But that is not the case here. Plaintiff dislikes orders issued by a state court adjudicating his divorce, orders which (i) were issued while Plaintiff was represented by counsel and (ii) Plaintiff has failed to challenge in the ordinary course of litigating his matrimonial action.

Nor does the public interest support extensive federal intervention that, at bottom, amounts to trying to coerce state courts to alter their orders. Plaintiff seeks to cajole state courts into

changing their orders by having this Court order Defendant to notify litigants and judges that certain state-court orders are likely unconstitutional. But it would not require this Court to actually invalidate those orders. So, at bottom, the preliminary injunction would create a mass system for pestering state-court judges, who nonetheless retain full discretion to leave their orders intact. The public interest does not support such a burdensome, expensive, and ineffective remedy.

Finally, the public interest does not support granting injunctive relief that would violate the separation of powers. Plaintiff's requested injunction amounts to creating a secondary route for reviewing judicial orders, with the review conducted by the executive branch outside of the ordinary appellate process. And, at least as related to this case, it would add no real value. Plaintiff had opportunities to be heard, and he was heard through counsel. His matrimonial case is ongoing, giving him constant opportunities to challenge interlocutory orders. He received and continues to receive all the process that is due and to which he is constitutionally entitled. Having executive officials involved in a novel mode of judicial review would thus be inappropriate and unnecessary.

## CONCLUSION

Because this Court lacks subject-matter jurisdiction and Plaintiff has failed to satisfy any of the requirements for securing a preliminary injunction, Defendant respectfully requests that this Court deny Plaintiff's motion for a preliminary injunction, ECF No. 14.

Dated:  December 15, 2025                                          RESPECTFULLY SUBMITTED,

Matthew Schwartz
Monroe County Attorney

*Zachary Nelson*
Zachary T. Nelson
Deputy County Attorney
307 County Office Building
39 West Main Street, Rochester, NY 14614
Telephone:  585.753.1413
E-Mail:  zacharynelson@monroecounty.gov